VIOLET BEAUDOIN *vs.* W. F. MAHANEY, INC.

York. Opinion, March 24, 1932.

*Lloyd P. LaFountaine,*
*Robert B. Seidel,* for plaintiff.
*Joseph R. Paquin,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

THAXTER, J.    After a verdict for the plaintiff for $4,500 this case is before us on the defendant's general and special motions for a new trial.

The basis of the action is negligence in the operation of an automobile in which the plaintiff was a passenger. The writ alleges that the automobile was "owned, operated, controlled and managed by said defendant, through its agent, servant and employee, one John J. Casey, said automobile was then and there being driven by one Henry Berthiaume who was then and there under the control of said Casey."

The defendant corporation, which was in the automobile business, employed Casey as a salesman who, as the defendant's agent, took a Ford automobile to demonstrate it to one Henry Berthiaume. After they had driven for a time, Berthiaume suggested that he would like to show the car to the plaintiff to whom he was engaged to be married. They went to her house and she came out prepared to ride with them. With the consent of Casey, Berthiaume took the wheel and drove; and the plaintiff sat between them on the driver's seat. Berthiaume seems to have had considerable experience in driving cars, and no claim is made by the plaintiff that Casey was negligent in permitting him to drive. They were proceeding along the road between Biddeford and Kennebunk, when a collision took place with another car just as they emerged from the underpass where the tracks of the Boston and Maine Railroad cross over the highway. This was a particularly dangerous spot, as the three strip road narrowed between the abutments of the railroad bridge and there were sharp bends in the road on either side just before

reaching the bridge. It was necessary for traffic approaching from either direction to make a sharp turn to the right before passing under the railroad. The plaintiff testified that, as they proceeded toward Kennebunk and reached the curve on the Biddeford side of the bridge, Berthiaume was driving from forty to forty-five miles an hour, and that both she and Casey warned him to go slower. That he was driving so fast or that such conversation took place is denied by both Berthiaume and Casey. At any rate as they approached the bridge they saw the lights of an oncoming car, and a collision took place about fifteen feet on the Kennebunk side. The testimony of the plaintiff's witnesses, including two highway officers, supports the contention that the accident happened by reason of Berthiaume's being on his left side of the road. The evidence for the defence substantiates its claim that the collision took place because the approaching car came across the road as it rounded the turn, and struck the automobile of the defendant while it was being properly driven on its own side of the highway.

At this time our further discussion of the case will, perhaps, be clarified, if we state that the testimony relating to Berthiaume's negligence is sharply conflicting, that the determination of this issue was clearly within the province of the jury, and that we can not disturb their finding on this point.

Before considering the general motion we will dispose of the matter raised by the special one. It appears, from the testimony taken out in support of this, that the presiding Justice at the opening of the term of court at which the case was tried, gave a general charge to all of the jurymen, in which he stated that there might be cases come before them which would be defended by insurance companies, and if there were any men on the panel representing liability insurance companies, they should make that fact known. Juror Mervin T. Ford informed the Court that he was such a representative, and was told by the presiding Justice to remain in attendance and the matter would be taken care of later. After the case was opened to the jury by the plaintiff, the presiding Justice noticed that Mr. Ford was on the panel, and following a consultation at the bench, the Court excused him and another juror was substituted in his place. The contention of the defendant is that because of this

sequence of events the jury was apprised of the fact that an insurance company was defending the case, and the defendant was thereby prejudiced. Defendants' counsel claims that he had no knowledge of the preliminary remarks of the Court and contends that, because of them and that by the excusing of Mr. Ford, the jury's attention was called to the fact of insurance. Because of his ignorance of these matters he did not at that time move for a mistrial.

To a discharge of a member of the panel and the substitution of another in his place after the opening of the case, the defendant had a valid ground of exception, but this right was waived. The proceedings indicate that it was agreed that the particular juror might be excused and another substituted. The change in the panel is not, however, the basis of the defendant's motion, but that by reason of such procedure knowledge was imparted to the jury that an insurance company was defending. This Court, however, has never gone so far as to hold that the mere fact that the jury may know of insurance is in itself a reason for ordering a mistrial. If it were so, some cases could never be tried at all, because in certain instances such fact is known without intent or fault of either party. The case of *Ritchie* v. *Perry*, 129 Me. 440, relates to the improper introduction in evidence of the fact of insurance. It is not an authority for the proposition that a new trial must be granted in every case where it may appear that the jury knows that an insurance company is defending.

The special motion for a new trial must be overruled. On the general motion the only question is whether the negligence of Berthiaume, the prospective purchaser, which the jury has found, can be imputed to the defendant, the owner of the automobile. This question, in the form now presented, has not previously been before this Court.

It seems to be well settled that the negligence of a prospective purchaser of an automobile, driving it for purposes of trial and unaccompanied by any representative of the owner, is not imputable to the owner of the car who has permitted him so to operate it. Control of it has been surrendered, and the relationship of principal and agent has not been established between the parties, who

are rather in the respective positions of bailor and bailee. *Flaherty v. Helfont*, 123 Me., 134; *Gulf Refining Co. v. Ray Motor Co.*, 129 Me., 499; *Mosby v. Kimball*, 345 Ill., 420; *Murphy v. Mace*, 112 Conn., 684; *Marshall v. Fenton*, 107 Conn., 728; *Brooks v. McNutt Auto Delivery Co.*, 214 N. Y. S., 562; *Cruse-Crawford Mfg. Co. v. Rucker*, 220 Ala., 101.

When, however, the purchaser is accompanied by the owner or his agent, who retains the right to direct the operation of the car, negligence of the driver may be charged to the owner.

One of the earliest cases involving this state of facts is *Samson v. Aitchison*, 1912 A. C., 844. The owner of an automobile, demonstrating it to a lady contemplating its purchase, permitted her son to take the driver's seat, whose negligence caused an injury to the plaintiff. The Privy Council in holding the owner liable said at page 850: "The mere fact that he had asked or permitted young Collins, while he sat beside him, to drive the car is in their Lordships' view not enough to establish per se that he had abandoned control of his car. And if the control of the car was not abandoned, then it is a matter of indifference whether Collins, while driving the car, be styled the agent or the servant of the appellant in performing that particular act, since it is the retention of the control which the appellant would have in either case that makes him responsible for the negligence which caused the injury."

See to the same effect the following: *Doyon v. Massoline Motor Car Co.*, 98 N. J. L., 540; *Harris v. Boling*, 132 Okla., 17; *Opecello v. Meads*, 152 Md., 29; 42 C. J., 1097; Note 20, A. L. R., 194.

This Court has had an analogous question before it and has indicated the result which it would reach on the facts here presented. From the opinion in *Fuller v. Metcalf*, 125 Me., 77, it appears that a father permitted his daughter to use an automobile owned by his wife and himself provided the mother would go with her. While the daughter was driving, accompanied by the mother, a collision occurred. Suit was brought against the mother. In sustaining a verdict against her this Court said, page 81: "The driver of an automobile renders a constant service to those who are riding in the car. This is true notwithstanding the service is sometimes ill-performed. The driver is not the servant of the ordinary passenger

because the element of right of control is wanting. But in the passenger who is also the owner (not a bailor) acceptance of service rendered is combined with right of control and opportunity for control. Every reason for the application of the doctrine of respondeat superior is present."

See also *Kelley* v. *Thibodeau*, 120 Me., 402.

It is quite possible for the owner or his representative to surrender control of the car and still remain as a passenger therein without liability for the acts of the driver. Such a case is *Pease* v. *Montgomery*, 111 Me., 582, which is cited in *Fuller* v. *Metcalf*, supra. Under these circumstances the status of bailor and bailee exists. We think that in such a case as the present it was for the jury to determine under instructions of the Court what was the relationship between the operator of the car and the agent of the owner riding with him. If Casey had surrendered to Berthiaume the right to direct and control the management of the automobile and was a mere passenger therein, the owner was not responsible for the negligence of the driver, otherwise the defendant is liable. We can not interfere with the jury's determination of this issue.

The motion claims that the damages awarded are excessive. With this contention we agree. Dr. Lamb, who treated the plaintiff in 1930, saw her in January, 1931, four months before the trial. He testified that at that time she had some swelling of the knee joint due to an inflammation of the lining following an injury, and that it would be advisable to remove by operation the enlarged tissues which were blocking the free movement of the joint. Dr. Dolloff examined her shortly before the trial and stated that aside from complaint by her of pain in the knee, when it was moved, there was little indication of anything the matter with it. Her own testimony shows that she has walked since the accident with some inconvenience and pain and that she has intermittently done some work. For some unexplained reason Dr. Lamb was not asked to examine her at the time of the trial, and we have only the benefit of his opinion of her condition as it was when he saw her four months previously. The testimony of Dr. Dolloff and other evidence in the case indicates that in the interval she may have improved in spite of the failure to follow the treatment recommended by Dr. Lamb. Putting

the most favorable interpretation for her on the evidence, the damages awarded are grossly excessive. The Court feels that a verdict of $2,000 would be reasonable. If the plaintiff will, within fifteen days from the filing of the rescript, enter her written consent to the reduction of the verdict to $2,000, the motion for a new trial will be overruled; otherwise it will be sustained.

> *Special motion overruled.*
> *General motion overruled if remittitur of all of the verdict in excess of $2,000 is filed within fifteen days from filing of rescript; otherwise sustained.*