[No. 32365.    Department Two.    September 21, 1953.]

CURTIS G. ROBBINS, *Respondent,* v. THOMAS GREENE *et al.,*
*Defendants,* L. A. WESTERWELLER, *Appellant.*[1]

[1]Reported in 261 P. (2d) 83.

*Gavin, Robinson & Kendrick,* for appellant.

*Homer B. Splawn, Earl M. Holmes,* and *Robert I. Bounds,* for respondent.

SCHWELLENBACH, J.—The issue in this case is whether the negligence of a prospective purchaser (provided he is a prospective purchaser), who is driving an automobile in a demonstration, accompanied by the agent or salesman of the owner-dealer of the automobile, may be imputed to the owner of the automobile.

About five-thirty in the afternoon of September 14, 1951, Curtis G. Robbins was driving his automobile in a northerly direction on a county road in the Tieton-Cowiche area in Yakima county. He was about to drive into the lane leading to his house, was off of the blacktop, and was continuing in a northerly direction, traveling at about fourteen miles an hour. At this point the road makes rather a sharp turn to the west. Just as he left the blacktop, a car came from the west at a terrific rate of speed (witnesses estimated its speed at from seventy to ninety miles an hour), missed the curve, struck the Robbins car, then careened on down the road, hit another car which was about one hundred feet to the

rear of the Robbins car, and finally came to rest off the road. Mr. Robbins was quite seriously injured.

The car which did the damage was a Lincoln Cosmopolitan. It was owned by L. A. Westerweller, and was used as a demonstrator car in his business, Midway Motors. Its price was $4,400—not what could be termed a medium priced car. That morning, about nine o'clock, Thomas Greene, a salesman for Midway Motors, had started out in the car for the purpose of visiting an elderly couple near Tieton. This couple had been in the day before and had seemed quite interested in this particular car. Greene testified that he drove the car to the place of business of James E. Kelso; that he first met Kelso in the summer of 1950 when he had sold him a Packard; that a month before the accident Kelso came into Midway Motors and looked at a 1950 Monterey that was there; that the next day he took the Monterey to Kelso's place of business and let him drive it; that later, Kelso's Packard was damaged, and while it was being repaired he came in and became interested in the Lincoln.

Greene testified that he told Kelso that he had to call on some people at Cowiche and asked him if he would like to go along and try out the Lincoln; that they stopped at the liquor store and bought a bottle; that they went to Kelso's house, where Kelso changed his clothes; that they had a drink or two (there was also some testimony that Greene had called some lady from Kelso's house); that they went to Tieton (Kelso driving) and saw some prospects and also had a drink at the Vet's Club; that they went (Greene driving) to see a Mr. Lilja, who was a "bird dog" of Greene (a "bird dog" is a man who gives names of prospects to a salesman and then receives a split of the commission if a sale is made); that at that time he decided not to see the elderly couple because he had liquor on his breath; that when they started back to town Kelso was driving; that Kelso seemed interested in the Lincoln and asked about mileage, trade-in, etc.; that he did not notice that Kelso was driving fast; that he was injured in the accident and spent three weeks at the hospital. Nevertheless, he was

seen pouring out what was left in the whiskey bottle after the accident. Five empty beer bottles were also discovered in the Lincoln.

Mr. Westerweller testified that the Lincoln Cosmopolitan was used by him personally and was used by salesmen for demonstration purposes only with his personal permission; that no salesman had a right to interest prospects by buying them any drinks; that if a salesman would make a deal as the result of liquor he would turn the sale down. There was considerable testimony concerning the methods of salesmanship and concerning restrictions placed upon salesmen in connection with their work.

Thomas L. Milliken, sales manager for Midway Motors, testified that they expect their salesmen to report at the sales meeting at eight o'clock a.m. each morning; that they expect them to be on the job until five p.m. and to check in during the day. He testified that, on the day of the accident, Greene came to him and asked permission to take the Lincoln Cosmopolitan to the Tieton-Cowiche area to show to the elderly couple who had been there the day before, and who had seemed to be definitely interested in the car; that he told Greene to go ahead but to be back by about ten o'clock if he could make it; that he did not see Greene again that day and that he never called in during the day; that Greene was given the car to go to that one specific place for that one specific purpose.

Oscar Breeding, Jr., who worked for Midway Motors at that time, testified that, in the afternoon of the day the accident occurred, a man came in to see Greene; that he (Breeding) asked Mr. Milliken where Greene was and Milliken replied, "I don't know when he will be back, he called in a while ago." Milliken denied that he talked to Breeding about Greene that day.

The jury returned a verdict against the Greenes and Westerweller. Westerweller alone appeals.

Error is assigned in failing to grant a motion for mistrial and in refusing to grant a new trial upon the grounds of misconduct of counsel in deliberately injecting into the

case an improper questioning of a witness; in allowing a witness to testify to, and in failing to strike, hearsay testimony; in failing to grant a nonsuit or in failing to grant a motion for directed verdict or for judgment notwithstanding the verdict, upon the grounds that Kelso was the operator of the Westerweller vehicle and was a bailee of the vehicle for whose negligence, if any, appellant was not responsible as a matter of law; in giving certain instructions; and in failing to give certain proposed instructions.

During the cross-examination of appellant, the following occurred:

"Q. In the case that you started, that was tried last jury term, entitled, 'L. A. Westerweller vs. James E. Kelso,' you took the same position in that case as you take now, namely, at the time and place of the accident Mr. Greene was without the scope of his employment and wasn't doing anything for you? A. (Nod). Q. Were you successful in that claim?

Simultaneously—
$$\begin{cases} \text{A. N—(in a very low tone of voice).} \\ \text{MR. GAVIN: I—} \\ \text{MR. SPLAWN: I withdraw the question—} \\ \text{A. —o. (very low)} \\ \text{MR. GAVIN: I object—} \end{cases}$$

MR. SPLAWN: I withdraw the question, I withdraw the question.

THE COURT: Objection sustained."

Appellant immediately moved for a mistrial, which was denied.

Respondent contends that there was no prejudice because the jury did not hear the answer. The prejudice, if any, was not in the giving of the answer, but in asking the question. Motions for mistrial usually arise in cases where the matter of insurance is interjected during the trial. See the recent case of *King v. Starr, ante* p. 115, 260 P. (2d) 351, for a thorough discussion of this question.

In *Gephart v. Stout,* 11 Wn. (2d) 184, 118 P. (2d) 801, a motion for mistrial was made, based upon the following testimony:

" 'Q. Do you recognize the defendant [appellant] Mr. Stout, as some one you saw near there at that time? A. Yes. I believe he is the gentleman that came back and told the

boy— Mr. Davis: Just a moment. I object. A. (continuing)—that he had nothing to worry about;—The Court: Just a minute. The objection is sustained. A. (continuing) —that he was fully covered by insurance. Mr. Davis: Just a moment. I object as not responsive. The Court: The objection is sustained and the jury instructed to disregard the answer of the witness.' "

In ruling upon the motion, the trial court said:

" 'The motion of the defendant [appellant] that the Court order a mistrial is denied for the reason that it is my belief that the question was not of such a nature as to indicate deliberate intent to inject the matter of insurance into the case, nor was it the intention of the witness to do so; . . .' "

We held:

"A mistrial should not have been granted unless it appeared that counsel for respondent or the witness deliberately, wilfully, or collusively had undertaken to inform the jury that the appellant was in some way protected by insurance. [Citing cases.]

"As Judge Chadwick stated in *Jensen v. Schlenz, supra*:

" 'The gravamen of the offense is not in the disclosure of a collateral fact, but in the manner of its disclosure, that is, the misconduct of counsel.' "

■ Trial courts are often confronted with situations where counsel, in his zeal, goes a little too far, and opposing counsel is lying in wait to move for a mistrial. There are other situations where counsel wilfully interjects a collateral matter for the deliberate purpose of influencing the jury. Then there are a large number of borderline cases, where it is difficult to decide whether the interjection of collateral matter is inadvertent or deliberate. In such instances, the trial court must exercise its discretion in ruling on the motion. We feel that the question asked in this case falls in the last category. We are satisfied that the court did not abuse its discretion in denying the motion for a mistrial.

Cleatus Thornton, a young neighbor of Robbins, heard the crash, saw the Robbins' car in the air, and rushed over to the scene. He was told to get an ambulance. He jumped into his car and drove a mile and a half to a hardware store

operated by William Glenn Weis. It took him two or three minutes. He told Weis, who telephoned for an ambulance. Weis testified that it was a little less than five minutes from the time Cleatus arrived at the store that he, Weis, arrived at the scene of the accident. He testified that, within four or five minutes after he arrived, he heard Kelso talk; that he was within two or three feet of him; that he heard somebody ask Kelso, "What in the world were you doing?" that "He appeared to be more or less a little shocked." He testified:

"Mr. Splawn: Q. What did Mr. Kelso say with respect to how the accident happened? A. He made two remarks I recall. One was to the effect he said he was going ninety miles an hour. Whether that was the time of the impact or not I don't know. When someone asked him 'What in the world happened' he said that he was going ninety miles per hour, and later said someone instructed him to hold her wide open; that she would take the curve wide open."

A motion was made for a mistrial, which was denied.

█ The so-called *res gestae* rule is applied with respect to the admission of testimony concerning statements made by participants in a transaction or by other persons present thereat. The theory of the admission of such testimony is that the statement is made while the person is still under the influence of the act and before there is time for him to fabricate. It may be made in answer to a question, provided it is spontaneous and under circumstances which would negative the thought that it might have been made with design or premeditation. *State v. Kwan,* 174 Wash. 528, 25 P. (2d) 104. In *Beck v. Dye,* 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022, we said:

"A careful examination of those cases, read chronologically and as a whole, will reveal that the rule as adopted, declared, and followed by this court requires that the statement or declaration concerning which testimony is offered must, in order to make such evidence admissible, possess at least the following essential elements: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event;

(2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

■ Appellant did not object to the first part of the statement, but felt that the latter part, that "someone instructed him to hold her wide open," did not come within the purview of the *res gestae* rule. We feel that all of the elements set forth in *Beck v. Dye, supra,* were met in this instance and that the trial court did not err in admitting the testimony of the entire statement.

Appellant contends that Kelso, the driver, was nothing more than a bailee of the car as far as appellant was concerned, relying upon *Hamp v. Universal Auto Co.,* 173 Wash. 585, 24 P. (2d) 77. In that case, the Universal Auto Company had entrusted a Lincoln automobile, owned by it, to John R. Allen, a prospective purchaser, for the purpose of testing and trying it out to determine whether he desired to purchase it. Mr. and Mrs. Allen took one Verle R. Miller along to drive for them. No agent or salesman for the automobile company was present. While the automobile was being driven by Miller, it collided with another car, causing injuries. An action was brought against Universal, contending that Mr. Allen, by reason of the fact that the car was entrusted to him, thereby became Universal's agent and employee. We held that, where a dealer entrusted an automobile to a prospective purchaser for the purpose of demonstration and effecting a sale, their relation is that of bailor and bailee, and the bailor is not liable to third persons for the negligent acts of the bailee.

The instant case is distinguishable from the *Hamp* case on its facts. Here, the automobile was not entrusted by Westerweller to Kelso. It was entrusted to Greene, Westerweller's employee and agent.

The rule is stated in 60 C. J. S. 1091, Motor Vehicles, § 436 e.:

"The owner is not as a general rule liable for the negligent or wrongful operation of the motor vehicle by a prospective purchaser, since a prospective purchaser operating the vehicle is usually regarded as a bailee and not an agent or servant of the owner [citing *Hamp v. Universal Auto Co., supra*] or one engaged in a joint enterprise with him. However, liability may be imposed where the owner is personally negligent, as in intrusting the vehicle to an incompetent driver or permitting the operation of a defective vehicle. Moreover, the owner may be liable where he or his agent is present in the car unless he has wholly surrendered the operation and control of the car to the prospective purchaser."

In *Beaudoin v. W. F. Mahaney, Inc.*, 131 Me. 118, 159 Atl. 567, the prospective purchaser, in the presence of, and with the consent of, a salesman, was driving the car. Through the prospect's negligence, the car was wrecked, and the prospect's fiancee, who was riding in the car, was hurt. She sued the owner-dealer and recovered. On appeal, the only question was whether the negligence of the prospective purchaser could be imputed to the owner of the automobile. In affirming the judgment, the court held that, where the prospective purchaser is accompanied by the owner or his agent, who retains the right to direct the operation of the car, the negligence of the driver may be imputed to the owner; that it is quite possible for the owner or his representative to surrender control of the car and still remain as a passenger therein without liability for the acts of the driver; that under such circumstances the status of bailor and bailee exists; that the question of the relationship of the parties should be determined by the jury, under proper instructions by the court.

In *Archambault v. Holmes*, 125 Conn. 167, 4 A. (2d) 420, a prospective purchaser was driving a car in the company of

a salesman. Due to the negligence of the prospect, the car was damaged. In an action by the owner against the prospect for damages, the court held that, where a person permitting another to operate an automobile remains in control, the driver is no more than the alter ego of such person, and the driver's acts are just as much the acts of such person as though such person were actually operating the automobile; that a seller of an automobile is absolved from liability for the negligence of a prospective purchaser operating an automobile while accompanied by an agent of the seller, only where the agent has abandoned his right to control the operation of the car and has surrendered such operation wholly to the purchaser.

For similar holdings, see *Wilhelmi v. Berns*, 274 Ky. 618, 119 S. W. (2d) 625; *McElrath v. Luarde*, 4 Ohio Supp. 281; *Smith v. Howard Crumley & Co.* (court of appeal of Louisiana—second circuit), 171 So. 188; and *Downtown Chevrolet Co. v. Braune*, 181 Okla. 134, 72 P. (2d) 842.

■ Our search has revealed only one state, Georgia, which has followed the rule suggested by appellant. In all other jurisdictions where the question has arisen, the rule has been followed that, if the car was being driven by a prospective purchaser accompanied by a salesman or agent, the owner has been held liable for the negligence of the prospective purchaser if the agent retains the right of control. In this case, the court properly refused to dismiss the action against appellant as a matter of law.

■ Error is claimed because instruction No. 31 ignored contributory negligence as a defense. Contributory negligence was defined in instruction No. 7 and was called to the attention of the jury in instructions Nos. 25, 29, 30, and 39. Although contributory negligence was pleaded and the court evidently instructed the jury on that issue as a matter of precaution, we are unable to find one word in the testimony which would warrant a finding of contributory negligence on the part of respondent.

■ Error is assigned in the giving of certain instructions which appellant claims were favorable to respondent. Our only criticism of the instructions is that too many were

given. There were sixty-four instructions in all. It is evident that several which were given were proposed by appellant, and that several were proposed by respondent; all slanted to a degree toward the contention of their proponents. But we do find that the trial court was eminently fair and impartial in the giving of instructions. We held in *Myers v. West Coast Fast Freight*, 42 Wn. (2d) 524, 256 P. (2d) 840, that instructions must be considered as a whole, and that even though a detached statement may, under the facts, be technically erroneous, it is not prejudicial error if the entire instructions fairly state the law.

■ The question as to whether or not, at the time of the accident, Kelso was a prospective purchaser, and whether or not Greene was within the scope of his employment, was adequately and fairly presented to the jury. It may very well be that many people would conclude that Kelso was not a prospective purchaser and that Greene was not within the scope of his employment, but was, as contended by appellant, on a "frolic of his own." But the jury found otherwise. In *Wilhelmi v. Berns, supra,* the court said:

"There is a conflict in evidence as to whether Kennedy was at the time of the accident acting in the course of his employment in demonstrating the automobile with the purpose to effect a sale. The issues made by proof on that question were submitted to the jury under an appropriate instruction and necessarily they would have to find that he was, before they could return a verdict against appellant. There is likewise a sharp conflict in evidence as to whether appellee sustained his injuries as a result of the negligent operation of the automobile by Pagliro or whether it was due to his own negligence. The jury under appropriate instruction found for appellee on that issue made by proof and without entering into a detailed statement of the evidence it may be said that while there is much persuasive evidence indicating that the accident was due solely to appellee's negligence and want of care for his own safety, there is likewise such evidence to the contrary as would forbid a holding that the verdict was flagrantly against the evidence or that it was not sufficiently supported by the evidence."

The judgment is affirmed.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.