Gary SILOW, Plaintiff,

v.

TRUXMORE INDUSTRIES, INCORPO-RATED, a corporation of the Commonwealth of Virginia, and Louis Willig, Defendants.

Civ. A. No. 77–80.

United States District Court,
D. Delaware.

May 4, 1978.

---

John M. Bader of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

Wayne N. Elliott of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendants.

## OPINION

STEEL, Senior District Judge:

Plaintiff Gary Silow brought this negligence action against defendant Truxmore Industries, Inc. ("Truxmore") and defendant Louis Willig ("Willig"). Presently before the Court is Truxmore's motion for summary judgment "on the grounds that reasonable men cannot differ and it is entitled to judgment as a matter of law."[1]

The standard for granting summary judgment is clear. It should be granted only if,

> taking the non-movant's allegations as true and drawing all inferences in his favor, the court is convinced from its review of the evidential sources available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law.

*Scott v. Plante,* 532 F.2d 939, 945 (3d Cir. 1976).

Drawing the inferences in plaintiff's favor, the facts are as follows:

By April 23, 1975, the date of the accident that triggered this lawsuit, plaintiff and Willig tentatively had agreed to become equal partners in a refuse business. (Silow Deposition, at 8). Plaintiff had no previous experience in the garbage business, having previously pursued an acting career. (Silow Deposition, at 8). Willig, on the other hand, did have previous experience in the garbage business: by April 23, 1975, he had begun the refuse business and developed several garbage accounts, which he serviced with a three-speed manual transmission Chevrolet pick-up truck. (Silow Deposition, at 5-7).

Willig communicated with John Cole ("Cole"), a regional manager with Truxmore, about the possibility of buying a used

---

1. Doc. No. 22.

garbage truck. (Cole Deposition, at 4). Cole met several times with Willig and George Cotton ("Cotton"), a mechanic whose business was next door to Willig's place of business. (Cole Deposition, at 6). They agreed that Cole would bring a truck to Newport [2] on April 23, 1975, and demonstrate it to Willig and plaintiff for possible purchase. (Cole Deposition, at 4). As a sales representative for Truxmore, Cole often demonstrated their trucks and was familiar with them. (Cole Deposition, at 4).

On the day of the accident, Cole brought a 1510 International Truck with a Truxmore body to Cotton's place of business, where it was understood that the truck would be demonstrated. (Cole Deposition, at 5). The truck was a used truck with a standard four-speed transmission in an "H" pattern. (Cole Deposition, at 6). Willig, plaintiff and Cole were checking the engine, when they discovered an oil leak. (Cole Deposition, at 14). Since none of them were mechanics, they asked Cotton to look at the engine. (Cotton Deposition, at 6). The hood was up and plaintiff was standing in front of the truck, looking at the engine. (Silow Deposition, at 19–21). Cotton asked that someone start the engine and Willig went around and turned the ignition key, apparently without taking any precautions against the truck being in gear. (Silow Deposition, at 19–21; Cotton Deposition, at 7; Cole Deposition, at 14). The truck was in low gear and moved forward when the key was turned, pinning plaintiff's leg between the bumper of that truck and the bumper of another truck parked in front of and facing the truck they were examining. (Silow Deposition, at 20). It was customary generally to leave trucks in low gear when they were going to be idle for more than a few minutes. (Cotton Deposition, at 8).

No genuine issue as to a fact material to Truxmore's liability remains for trial. The above summary of the facts is based on Truxmore's statement of the facts in its opening brief,[3] which plaintiff agreed is correct,[4] and the additional facts that plaintiff thought relevant.[5] Since there is no dispute about those facts, there can be no genuine issue as to a material fact. The only question remaining is whether Truxmore is entitled to judgment as a matter of law on those facts.

Plaintiff alleges in his complaint that Truxmore, through its agent Cole, was negligent in three respects and that this negligence was the proximate cause of plaintiff's injury. The alleged negligence is as follows: (1) permitting Willig to operate the truck without instructing him as to the idiosyncrasies of the transmission lever operation; (2) failing to warn Willig as to the proper way of operating the truck before allowing him to do so; and (3) failing to warn Willig that the truck was in gear before he began to activate the starter mechanism.[6] It is undisputed that Cole was a Truxmore agent;[7] the only dispute is over whether or not Cole was negligent.

█ The facts in the record support the conclusion that Cole did not instruct Willig how to operate the truck, particularly the transmission lever operation, before allowing Willig to start the engine. Neither did Cole warn Willig that the truck was in gear when Willig went to start it. The legal question is whether, under the facts established by the record, Cole was under a legal duty to instruct Willig or to warn him.

A conclusion that Cole had a duty to instruct or warn Willig in this case would have to be predicated on Cole's status as the demonstrator of the truck. Plaintiff argues that, as the demonstrator, Cole had control over the demonstration and therefore was under a duty to instruct or warn

**2.** Since the accident occurred in Delaware, Delaware law controls in this diversity suit.

**3.** Doc. No. 23.

**4.** Plaintiff's Answering Brief, Doc. No. 26, at 1.

**5.** *Id.*

**6.** Paragraph 6 of the Complaint.

**7.** *See* Deposition of John Cole, Doc. No. 21, at 2.

Willig so as not to subject his potential buyers, namely, plaintiff and Willig, to an unreasonably dangerous demonstration. Plaintiff cites no relevant cases in support of this theory.

Several older cases, however, based on the control theory, have held the owner of a motor vehicle liable for injuries to third persons [8] resulting from the negligence of a prospective purchaser in operating the vehicle during a demonstration. *See Archambault v. Holmes, et al.,* 125 Conn. 167, 4 A.2d 420 (1939); *Greenie v. Nashua Buick Co.,* 85 N.H. 316, 158 A. 817 (1932); *Lott v. Grant, et al.,* 198 Wis. 291, 223 N.W. 846 (1929). Where there was no basis for concluding that the owner's agent actually controlled the prospective purchaser's operation of the car, no liability was found. *See, e.g., Horkey v. Cortz,* 53 Del. 557, 173 A.2d 741 (1961); *Beaudoin v. W. F. Mahaney, Inc.,* 131 Me. 118, 159 A. 567 (1932). A finding of control in such cases has usually turned on whether or not the owner's agent was present in the car when the prospective purchaser was operating it. *Annot.,* 31 A.L.R.2d 1445, 1449–50 (1973); 60A C.J.S. *Motor Vehicles* § 436(5), at 1002 (1969); *but see Beaudoin, supra* (dictum).

It is clear from the facts in this case that Cole did not have actual control over the demonstration. Cole, plaintiff and Willig were all looking at the engine together. When they discovered the oil leak, they asked Cotton to come look at it, since he had more expertise than the three who were looking at the engine. Cole, as well as plaintiff and Willig, looked to Cotton as the expert mechanic. It was Cotton who directed that the motor engine be started. The facts show that Cole had no more control over the demonstration than did plaintiff or Willig. At most, it can be argued that Cole, as the agent of the owner, had a duty to control the demonstration and failed to do so. But Cole was not required to anticipate negligence on the part of another; he was entitled to expect that the

people he was with would act reasonably under the circumstances. Willig had experience driving trucks and Cole knew it. Therefore, there was no reason for Cole to think that Willig would act otherwise than would a reasonably prudent person with experience in truck driving. Consequently, there was no indication that Cole needed to control Willig's actions.

Cole's status as the demonstrator is not sufficient by itself to create a duty to warn or instruct. There had to have been a danger of which Cole reasonably should have been aware. The danger of Willig starting the truck without making sure that it was out of gear or putting in the clutch was not a danger of which Cole reasonably should have been aware, in light of Willig's prior experience with trucks and Cole's awareness of that experience.

 Ordinarily it is inappropriate to grant a motion for summary judgment on a negligence claim. 6 *Moore's Federal Practice* ¶ 56.17[42], at 56–946 (2d ed. 1974); 73 Am.Jur.2d *Summary Judgment* § 6 (1974). Where the facts are uncontroverted, however, and reasonable people could not differ in determining the standard of care such that, at trial, the Court would have to grant defendant's motion for directed verdict, it is appropriate to grant the motion for summary judgment in the interest of avoiding a wasteful trial. *See* 6 *Moore, supra,* ¶ 56.-04[1], at 56–63. This case is clearly one in which summary judgment is appropriate.

Summary judgment will be granted for Truxmore.

---

**8.** Plaintiff in this case, of course, is a prospective purchaser rather than a third person, but it is clear that the duty owed to a prospective

purchaser is at least as high as that owed to a third person.