2015 COA 129

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**AN/CF ACQUISITION CORPORATION**
d/b/a Go Courtesy Ford, Defendant–Appellee.

**Court of Appeals No. 14CA1820**

Colorado Court of Appeals,
Div. A.

Announced September 10, 2015

Law Office of Roger Moore, Roger Moore, W. Bryant Bodie, Denver, Colorado, for Plaintiff–Appellant.

White and Steele, P.C., Grant R. Curry, Denver, Colorado, for Defendant–Appellee.

Opinion by CHIEF JUDGE LOEB

¶ 1 Plaintiff, American Family Mutual Insurance Company, appeals the district court's entry of summary judgment in favor of defendant, AN/CF Acquisition Corporation d/b/a Go Courtesy Ford, and the court's order denying American Family's cross-motion for summary judgment. We reverse the judgment and remand the case with directions to enter summary judgment in favor of American Family on its cross-motion and for further proceedings as appropriate.

I. Background and Procedural History

¶ 2 This case requires us to determine whether a car dealership is vicariously liable for a prospective purchaser's negligence during a test drive under the doctrine of joint venture.

¶ 3 The events leading up to the accident in this case are undisputed. Kristin Hart asked to test drive a car she was interested in buying from Go Courtesy Ford, a car dealership. A Go Courtesy Ford salesman accompanied Hart as a passenger on the test drive. The salesman chose the route and directed her where to turn. During the test drive, Hart negligently attempted to turn left in front of oncoming traffic and collided with a car driven by Kelly Minna–Angard.

¶ 4 Minna–Angard filed a claim with her insurer, American Family, for damages resulting from the accident. American Family paid her claim. American Family then filed

this negligence action as the subrogee of Minna–Angard against Hart and Go Courtesy Ford to recover both the amount it paid to Minna–Angard and the amount of her deductible. Hart did not defend the case, and the district court entered a default judgment against her.[1]

¶ 5 American Family and Go Courtesy Ford filed cross-motions for summary judgment. Based on the undisputed facts, American Family argued that the test drive constituted a joint venture between Go Courtesy Ford and Hart, making Go Courtesy Ford vicariously liable for Hart's negligence. Go Courtesy Ford argued that the test drive was not a joint venture because the participants had adverse financial interests.

¶ 6 After briefing, the district court issued a written order granting Go Courtesy Ford's motion and denying American Family's cross-motion. Based on undisputed facts, the court ruled, as a matter of law, that the test drive was not a joint venture and, therefore, that Go Courtesy Ford was not liable for Hart's negligence. The court entered summary judgment in favor of Go Courtesy Ford.

¶ 7 The sole issue on appeal is whether, as a matter of law, the test drive in this case constituted a joint venture between Go Courtesy Ford and Hart. For the reasons set forth below, we conclude that it did. Accordingly, we reverse the judgment in favor of Go Courtesy Ford and remand for entry of summary judgment in favor of American Family.

## II. Standard of Review

¶ 8 Summary judgment is appropriate under C.R.C.P. 56 when the pleadings and supporting documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11, 304 P.3d 239. We review a trial court's order on a summary judgment motion de novo. *Id.*

1. Hart was not named as a party to this appeal, and she has not participated in this appeal in any

## III. Applicable Law

¶ 9 Under the common law doctrine of joint venture, each participant in a joint venture is vicariously liable for the negligence of the other participants. *Mayer v. Sampson*, 157 Colo. 278, 282, 402 P.2d 185, 188 (1965).

¶ 10 No published Colorado case has considered this doctrine in the context of a test drive. However, Colorado courts have applied the joint venture doctrine in other circumstances involving the operation of a car. We first review those Colorado cases. We then examine cases from other jurisdictions that have considered the issue of vicarious liability in the context of a test drive.

### A. Colorado Joint Venture Cases

¶ 11 Colorado courts recognize two distinct types of joint ventures: joint business ventures and joint ventures in the operation of automobiles. *See Watson v. Reg'l Transp. Dist.*, 762 P.2d 133, 137 n.6 (Colo.1988); *Bainbrich v. Wells*, 28 Colo.App. 432, 434–35, 476 P.2d 53, 54 (1970), *aff'd, Wells v. Bainbrich*, 176 Colo. 503, 491 P.2d 976 (1971); *cf.* CJI–Civ. 7:21 (2012) (defining joint venture generally); CJI–Civ. 7:22 (2012) (defining joint venture in the operation of a vehicle or other instrumentality).

¶ 12 For a joint venture to exist in the operation of an automobile, two elements must be met: (1) "two or more persons must unite in pursuit of a common purpose" and (2) "each person must have a right to control the operation of the automobile in question." *Bainbrich*, 28 Colo.App. at 434, 476 P.2d at 54; *accord Mayer*, 157 Colo. at 282, 402 P.2d at 188.

¶ 13 Colorado courts have applied the joint venture doctrine to hold defendant passengers vicariously liable for drivers' negligence in a line of cases dating back nearly a century. In *Boyd v. Close*, 82 Colo. 150, 155, 257 P. 1079, 1081 (1927), the supreme court applied the doctrine to two cousins driving home from a dance. The cousin whose family owned the car had driven on the way to

way.

the dance, but the other cousin was driving on the way home when the accident occurred. *Id.* at 151–52, 257 P. at 1080. The court concluded that the cousins were engaged in a "joint enterprise" because they "took a particular car for a particular trip and shared between them the duty of driver." [2] *Id.* at 155, 257 P. at 1081. Under those circumstances, the court held that the passenger whose family owned the car was liable for the driver's negligence. *Id.*

¶ 14 Similarly, in *Mayer*, 157 Colo. at 282, 402 P.2d at 188, the supreme court concluded that friends driving home from a ski trip were engaged in a joint enterprise. The passenger owned the car and testified that he retained control over the driver. *Id.* at 281, 402 P.2d at 187–88. The court concluded that those facts "show[ed] a common purpose with the requisite control in [the passenger] sufficient to constitute a joint enterprise for the purpose of holding him accountable for the negligence of [the driver]." *Id.* at 282, 402 P.2d at 188.

¶ 15 In *Bainbrich*, 28 Colo.App. at 434, 476 P.2d at 54, a division of this court held that a married couple driving home after playing in a band was *not* engaged in a joint venture because the "right to control" element was not met. The court reached this conclusion because "[n]o evidence was presented in the trial of the matter indicating that [the wife] exercised or had any authority to exercise any control over the automobile owned and being driven by her husband." *Id.*

¶ 16 Finally, in *Bilsten v. Porter*, 33 Colo. App. 208, 211–12, 516 P.2d 656, 658 (1973), a division of this court held that a joint enterprise existed where two high school students drove from a cafe back to school in a car owned by the passenger's father. The court concluded that "there was sufficient evidence for the jury reasonably to conclude that [the passenger] possessed some measure of control over the operation of the vehicle." *Id.*

¶ 17 In each of these cases, the joint venture doctrine was applied to determine a defendant passenger's liability. In other cases, however, the joint venture doctrine

was applied to prevent plaintiff passengers from recovering in negligence actions against third parties. *See, e.g., Lasnetske v. Parres,* 148 Colo. 71, 77, 365 P.2d 250, 253 (1961), *overruled by Watson,* 762 P.2d 133; *Moore v. Skiles,* 130 Colo. 191, 200, 274 P.2d 311, 315 (1954), *overruled by Watson,* 762 P.2d 133.

¶ 18 The supreme court overruled this second line of cases in *Watson*, 762 P.2d at 141, which held that a "driver's negligence may not be imputed to an owner-passenger so as to limit the owner-passenger's recovery in an action in negligence." The court explained that the rule of imputed negligence in motor vehicle cases was rooted in public policy considerations that applied only to cases involving a defendant owner-passenger:

> Earlier in the twentieth century the growing injury toll from traffic accidents prompted a search for financially responsible defendants. The search ultimately led to the employment of the doctrine of imputed negligence in motor vehicle cases, whereby liability was imposed on the defendant owner-passenger of a vehicle based upon the negligence of the driver, even though the owner-passenger was free from negligence. The salient rationale underlying the doctrine, as it relates to defendant owner-passengers, is that since automobiles are expensive, the owner is more likely to be able to pay any damages than the driver, who may be entirely impecunious; and that the owner is the obvious person to carry the necessary insurance to cover the risk, and so to distribute any losses among motorists as a class.
>
> Thus, the negligence of a driver was imputed to the defendant owner-passenger to provide the injured party with a financially responsible source of recovery. Courts justified the doctrine either by reference to the parties' legal relationship (e.g., master-servant, principal-agent or joint enterprise) or simply in terms of the all-encompassing "right to control."

*Id.* at 138 (internal quotation marks and citations omitted). The court noted that these

2. The terms "joint venture" and "joint enterprise" are used interchangeably in this line of cases. *See, e.g., Bainbrich v. Wells,* 28 Colo.App. 432, 434, 476 P.2d 53, 54 (1970), *aff'd, Wells v. Bainbrich,* 176 Colo. 503, 491 P.2d 976 (1971).

public policy considerations were "absent in the case of imputed comparative negligence where the owner is an injured passenger in his own car." *Id.* at 140.

¶ 19 Nevertheless, *Watson* left intact the line of cases that applied the joint venture doctrine to defendant passengers. *See id.* at 137 n.7. The court distinguished *Bainbrich* on the basis that it "involved the imputation of negligence to a defendant, which necessarily involves different legal and policy considerations from the imputation of negligence to bar a plaintiff's claim for relief." *Id.* Thus, *Bainbrich* and the other Colorado cases involving defendant passengers' liability under the joint venture doctrine remain good law in Colorado.

### B. Test Drive Cases from Other States

¶ 20 Because no published Colorado case has applied the joint venture doctrine in the context of a test drive, we next examine cases from other states that have considered the issue of a dealer's vicarious liability in that context.

¶ 21 Most courts have followed the general rule that a dealer is not liable for a prospective purchaser's negligence during a test drive if the prospective purchaser is unaccompanied by the dealer's representative. *See generally* R.D. Hursh, Annotation, *Dealer's Liability for Negligent Operation of Car by Prospective Purchaser or One Acting for Him*, 31 A.L.R.2d 1445 §§ 2–3 (1953) (stating the rule and collecting cases); 8 Am. Jur. 2d *Automobiles* § 625 (2015) (same).

¶ 22 However, where, as here, the dealer's representative is a passenger during the test drive, the majority rule is that the dealer is liable for the prospective purchaser's negligence. *See generally* Hursh, 31 A.L.R.2d 1445 §§ 2, 4 (stating the rule and collecting cases); 8 Am. Jur. 2d § 625 (same). Courts following this rule have relied on a variety of legal theories as the basis for the dealer's liability, including agency, joint enterprise, or the dealer's right of control. *See, e.g., Wilhelmi v. Berns*, 119 S.W.2d 625, 627–28 (Ky. 1938) (agency theory); *Dahnke v. Meggitt*, 26 N.E.2d 223, 224 (Ohio Ct. App. 1939) (agency theory); *Caldwell v. Sharpe*, 21 Va. Cir. 368, 1990 WL 10030101, at *1–2 (1990) (joint en-

terprise theory); *Robbins v. Greene*, 261 P.2d 83, 87–88 (Wash. 1953) (right of control).

¶ 23 Regardless of the legal theory applied, however, each of these cases has focused on the right to control the operation of the car as the key element required for imposing liability on the dealer. This requirement is satisfied where "[the owner] or his agent is present in the car unless he has wholly surrendered the operation and control of the car to the prospective purchaser." *Robbins*, 261 P.2d at 87 (internal quotation marks omitted); *accord Caldwell v. Sharpe*, 21 Va. Cir. 368, 1990 WL 10030101, at *2 (1990); *see also Dahnke*, 26 N.E.2d at 224 ("[The dealer], the owner of the vehicle, was in it and had the right to control it. Had he wished to do so he could have directed [the prospective purchaser] how and where to drive it, or at any time ·could have taken it from him.").

¶ 24 The court in *Caldwell* applied a joint enterprise analysis similar to Colorado's test in ruling that a dealer could be held liable for a prospective purchaser's negligence. 21 Va. Cir. 368, at *1. Virginia's two-part test requires (1) "a community of interest in the object and purpose of the undertaking" and (2) "an equal right to direct and govern the movements and conduct" of each participant. *Id.* (internal quotation marks omitted).

¶ 25 With respect to the first element, the Virginia court rejected the dealer's argument that "there can be no community of interest between the customer and the dealer as their position is adversarial." *Id.* The court reasoned that, although the dealer and customer had adverse financial interests, they had a common interest in conducting the test drive itself:

> There is a "community of interest" in the test drive itself; that is, the "object and purpose" of the drive is to find an automobile which is to be the subject of the negotiation. Each party has an interest in the satisfactory performance throughout the test. Clearly, the community of interest may not extend into the discussion and negotiation of price.

*Id.* at *2.

¶ 26 The court held that the second element was met where a salesman accompanies

the customer on the test drive because "there remains with the salesman a right to direct control, even if the salesman does not exercise said right, unless he fully surrenders and abandons such right." *Id.* Based on its conclusion that a test drive could constitute a joint enterprise between a dealer and a customer, the court denied the defendant dealer's motion for summary judgment.

¶ 27 In two other cases, courts in Louisiana and Texas held that a defendant dealer was not liable for a customer's negligence during a test drive under the doctrine of joint enterprise. *See Barnett v. Globe Indem. Co.,* 557 So.2d 300, 301–02 (La.Ct.App.1990); *Greg Lair, Inc. v. Spring,* 23 S.W.3d 443, 447–48 (Tex.App.2000). However, those courts employed a joint enterprise analysis different from Colorado's test for joint enterprise in the operation of a vehicle. .

¶ 28 In *Barnett,* the court concluded that no joint enterprise existed during a test drive because the salesperson and customer did not have a "mutual intent to combine their property, labor or skill in the conduct of a venture analogous to a partnership." 557 So.2d at 301. Although a similar element is required under Colorado's test for joint business ventures, it is not part of Colorado's test for joint venture in the operation of a vehicle. *See Watson,* 762 P.2d at 137 n.6; *Bainbrich,* 28 Colo.App. at 434, 476 P.2d at 54.

¶ 29 Similarly, in *Greg Lair,* the court held that a test drive was not a joint enterprise because Texas precedent limited the joint enterprise doctrine to enterprises " 'having a business or pecuniary purpose.' " 23 S.W.3d at 447 (quoting *Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 17 (Tex.1974)). Because the financial interests of the dealer and customer were adverse, the court concluded that they did not have the "community of pecuniary interest" required under Texas law. *Id.* at 448. Again, this requirement is not part of Colorado's test for a joint enterprise in the operation of a vehicle. *See Bainbrich,* 28 Colo.App. at 434, 476 P.2d at 54.

¶ 30 Thus, because both *Barnett* and *Greg Lair* analyzed the test drive scenario using a joint business venture analysis, those cases offer little guidance or persuasive authority in Colorado, where courts apply a different test for a joint venture in the operation of a vehicle. *See Watson,* 762 P.2d at 137 n.6.

## IV. Analysis

 ¶ 31 Applying Colorado's test for joint venture in the operation of a vehicle to the undisputed facts of this case, we conclude that Go Courtesy Ford, through its salesman, was engaged in a joint venture with Hart during the test drive.

### A. Common Purpose

¶ 32 We first determine whether Go Courtesy Ford and Hart were "unite[d] in pursuit of a common purpose." *Bainbrich,* 28 Colo. App. at 434, 476 P.2d at 54.

¶ 33 The district court ruled that this element was not met because Go Courtesy Ford and Hart had different reasons for participating in the test drive:

> Ms. Hart was interested in purchasing the vehicle. [The salesman] was interested in selling the vehicle. The parties would have a common purpose if they were both engaged in this matter for the same reason. In other words, the parties must be united in the *same* goal.... In the present matter the parties have opposite interests, one being interested in the sale of the vehicle and the other being interested in the purchase. They are not united in a common purpose. They have separate and distinct goals.

¶ 34 We conclude that the district court erred in ruling that Go Courtesy Ford and Hart did not share a common purpose. We are persuaded by the reasoning in *Caldwell,* 21 Va. Cir. 368. Like the court in *Caldwell,* we conclude that Go Courtesy Ford and Hart shared a common purpose in conducting the test drive itself, notwithstanding their differing financial interests in the underlying transaction. *See id.* at *2. Here, as in *Caldwell,* the purpose of the test drive was to determine whether a particular car would be the subject of a transaction, and both Go Courtesy Ford and Hart had "an interest in the [car's] satisfactory performance throughout the test." *Id.* Indeed, the Go Courtesy Ford salesman who accompanied Hart on the test drive testified in his deposition that he

and Hart had already negotiated and agreed on a price. Thus, both participants had a common interest in conducting the test drive successfully to complete the transaction.

¶ 35 Under these circumstances, we conclude that Go Courtesy Ford and Hart were "unite[d] in pursuit of a common purpose" during the test drive.[3] *Bainbrich,* 28 Colo. App. at 434, 476 P.2d at 54.

¶ 36 We are not persuaded by Go Courtesy Ford's reliance on *Barnett,* 557 So.2d 300, because that case applied a joint business venture analysis that differs from Colorado's test for a joint venture in the operation of a vehicle. *Compare id.* at 301 (applying the standard for partnership), *with Bainbrich,* 28 Colo.App. at 434–35, 476 P.2d at 54 (applying separate tests for a joint business venture and a joint venture in the operation of a vehicle). Moreover, Colorado cases have recognized the existence of joint ventures where the participants had a common purpose unrelated to business or financial interests. *See Mayer,* 157 Colo. at 282, 402 P.2d at 188 (friends driving home from a ski trip); *Boyd,* 82 Colo. at 155, 257 P. at 1081 (cousins driving home from a dance); *Bilsten,* 33 Colo.App. at 211–12, 516 P.2d at 658 (students driving from a cafe to school).

### B. Right of Control

We next determine whether Go Courtesy Ford had "a right to control the operation of the automobile in question." *Bainbrich,* 28 Colo.App. at 434, 476 P.2d at 54.

¶ 37 The district court concluded that Go Courtesy Ford's salesman "exercised the right to control the operation of the vehicle by telling Ms. Hart where to turn and directing her where she would be driving."

¶ 38 We agree with the district court's conclusion. Go Courtesy Ford had a right to control the operation of the car because it owned the car and its salesman accompanied Hart as a passenger. *See Dahnke,* 26 N.E.2d at 224; *Caldwell,* 21 Va. Cir. 368, at

*1–2; *Robbins,* 261 P.2d at 87–88; *see also Mayer,* 157 Colo. at 282, 402 P.2d at 188 (joint venture existed where owner-passenger testified that he retained control over the driver). As the district court noted, the salesman actually exercised this right of control during the test drive by choosing the route and telling Hart where to turn.

¶ 39 Citing *Watson,* Go Courtesy Ford argues that courts should not continue to apply the joint venture doctrine because it is based on a "legal fiction" regarding an owner-passenger's right of control. As noted above, however, *Watson* addressed the joint venture doctrine only as it applied to prevent plaintiff passengers from recovering in tort. 762 P.2d at 141. In that context, the court concluded that the doctrine was "based upon a legal fiction unsupported by, and in direct opposition to, valid policy considerations." *Id.* at 139. However, *Watson* specifically distinguished and left intact cases that applied the doctrine to defendant passengers. *Id.* at 137 n.7. Those cases include supreme court decisions that are binding on our court. *See Mayer,* 157 Colo. at 282, 402 P.2d at 188; *Boyd,* 82 Colo. at 155, 257 P. at 1081; *see also People v. Allen,* 111 P.3d 518, 520 (Colo. App.2004) (the Colorado Court of Appeals is bound by the decisions of the Colorado Supreme Court). Moreover, Go Courtesy Ford's argument is not persuasive in this case because it is undisputed that Go Courtesy Ford's salesman exercised actual control over the operation of the car.

¶ 40 We also reject Go Courtesy Ford's further argument that the rule of imputed negligence based on joint venture should be abrogated because Colorado has adopted a comparative negligence statute. Go Courtesy Ford does not cite any specific statutory provision, and we are not persuaded that the adoption of a comparative negligence scheme affects vicarious liability in this context. *Cf. Reid v. Berkowitz,* 2013 COA 110M, ¶ 42, 315 P.3d 185 ("[P]rinciples of fault allocation set

---

3. The parties' dispute about a purported change in another portion of the salesman's deposition testimony has no bearing on this conclusion. The dispute concerns the salesman's response to a question about whether his and Hart's interests were "consistent with one another." Our analysis is based on the undisputed facts regarding the circumstances of the test drive. The salesman's characterization of the participants' interests as being consistent or inconsistent is not a determinative factor.

forth in section 13–21–111.5 do not affect vicarious liability.").

¶ 41 In sum, we conclude that the test drive constituted a joint venture between Go Courtesy Ford and Hart. Therefore, as a matter of law, Go Courtesy Ford is liable for Hart's negligence during the test drive.

## V. Conclusion

¶ 42 The district court's entry of summary judgment in favor of Go Courtesy Ford is reversed, and the case is remanded to the district court with directions to enter summary judgment in favor of American Family on its cross-motion and for further proceedings as appropriate.

Rothenberg * and Roy *, JJ., concur