JAMES W. GRINTER, LONITA N. GRINTER *v.* THOMAS HAAG.

[No. 1-175A20. Filed March 30, 1976. Rehearing denied May 6, 1976.]

596

*John T. Lorenz, Robert J. Wampler, Kightlinger Young Gray & DeTrude,* of counsel, of Indianapolis, for appellants.

*G. Ronald Heath, John D. Cochran, Jr., Rocap, Rocap, Reese & Young,* of counsel, of Indianapolis, for appellee.

LYBROOK, J.—Plaintiff-appellant James Grinter was injured while riding as a passenger in an automobile owned by him and being driven by his wife, Lonita Grinter, as the result of a collision with defendant-appellee Thomas Haag. In the Grinters' action against Haag, the jury returned a verdict in Haag's favor. Thereupon, James initiated this appeal presenting the following issues for review:

(1) Whether the court erred in instructing the jury on the doctrine of joint enterprise.

(2) Whether the court erred in instructing the jury on the doctrine of imputed negligence based upon the principle of ownership of the vehicle.

(3) Whether the court erred in instructing the jury jointly on plaintiffs' duty of care.

## I.

The principles upon which the doctrine of joint enterprise rests were succinctly stated in *Keck* v. *Pozorski* (1963), 135 Ind. App. 192, 191 N.E.2d 325, as follows:

"To establish a joint enterprise, an essential element is the existence of joint control over the management and operation of the vehicle and over the course and conduct of the trip. There must be a community of interest in the object and purpose of the undertaking and an equal right to direct and govern the movements and conduct of each other in 'respect thereto. As between the parties, there must be a contract either express or implied, to that effect. *Oppenheimer, Oppenheimer Bros., Inc.* v. *Craft* (1961), 132 Ind. App. 452, 175 N.E.2d 715; *Spencer* v. *Pettibone et al.* (1947), 117 Ind. App. 426, 70 N.E.2d 439."

Recent cases have focused on the question of the character of the object or purpose of the undertaking necessary to support the giving of an instruction on the doctrine. Examination of relevant decisions led Judge Sullivan to the following conclusion in *Leuck* v. *Goetz* (1972), 151 Ind. App. 528, 280 N.E.2d 847:

"In this state, the effect of decisional law is that no liability is imputed to the spouse by virtue of a joint enterprise theory absent a showing of at least some joint proprietary purpose."

Likewise, in *Ackman* v. *Bullard* (1974), 161 Ind. App. 437, 316 N.E.2d 444, we concluded:

" '. . . [I]t is generally agreed that something more is required for a joint enterprise than the mere showing of a contract or agreement to travel together to a destination for a common purpose.'

\* \* \*

"We detect an absence of the common pecuniary interest in other recent Indiana cases where joint enterprise instructions have been held inapplicable. For instance, in *Leuck,* a husband and wife were bound for church and a family gathering, the court holding in effect that the establishment of a joint enterprise requires more than a husband and wife embarked upon a journey with a common destina-

tion and common purpose." (Original emphasis.) See also, Prosser, The Law of Torts § 72 (4th Ed. 1971).

Plaintiffs objected to defendant's tendered instruction on joint enterprise on the grounds that there was no evidence of any agreement between the plaintiffs or of joint ██ control over operation of the vehicle. James' argument on appeal is directed to the alleged lack of evidence of any joint proprietary purpose. Generally, a party may not change or add to the grounds of his objections in the reviewing court. See, *Hendrickson & Sons Motor Co. v. Osha* (1975), 165 Ind. App. 185, 331 N.E.2d 743. However, we decline to find waiver since, as reflected in the following discussion from Prosser, The Law of Torts § 72 (4th Ed. 1971), the issue of joint control or right to control is generally dependent on that of the object or purpose of the undertaking:

"The prevailing view is that a joint enterprise requires something, beyond the mere association of the parties for a common end, to show a mutual 'right of control' over the operation of the vehicle—or in other words, an equal right in the passenger to be heard as to the manner in which it is driven. It is not the fact that he does or does not give directions which is important in itself, but rather the understanding between the parties that he has the right to have his wishes respected, to the same extent as the driver. In the absence of circumstances indicating such an understanding, it has been held that companions on a pleasure trip, members of the same family, parties engaged in a commercial transaction, servants riding with the employer, or fellow servants in the course of their employment, although they may have a common purpose in the ride, are not engaged in a joint enterprise. Nor, of course, is the fact that the passenger has requested the driver to make the trip for his benefit sufficient to establish such a right of control.

"If the purpose of the journey is a business or financial one, in which the parties have a common interest, the mutual right to direct the operation of the car is much more readily found. There are courts which have gone so far as to say that the mutual right of control does not exist, and so a joint enterprise does not exist, in the absence of such a common pecuniary interest in the use of the car

for the trip. The justification for this position may be that such a financial venture involves a closer analogy to the law of partnership, and affords more reason for regarding the risk as properly to be charged against all those engaged in it.

\* \* \*

"The essential question is whether the parties can be found by implication to have agreed to an equal voice in the management of the vehicle, which in the normal and usual case is merely an issue of fact for the jury."

The undisputed evidence in the case at bar reveals that James and Lonita were married about three months prior to the collision in question. Lonita was not employed during that period of time. James, a Marine Corps officer, completed training at Quantico, Virginia, on September 10, 1969, and was ordered to report to his next duty station at Fort Sill, Oklahoma. The Marine Corps authorized the use of the Grinters' private automobile for the relocation and allowed a travel time of six days.

On September 14, 1969, the Grinters left Virginia to travel to Oklahoma in an automobile, purchased on September 10 and owned by James. Lonita was the sole operator of the automobile since James was not a licensed driver. The Grinters had previously planned their route, and James was reading maps and generally acting as navigator for the trip.

The collision in question occurred in Marion County on Interstate 465 between 5:30 and 6:00 P.M. on September 16, 1969. The Grinters had previously planned to stop for the night in Terre Haute, Indiana. Immediately prior to the collision, James was in the front passenger seat ". . . looking down at the map, trying to figure out when approximately we'd have to get back on I-70. . . ."

We agree with James' contention that the evidence fails to demonstrate the requisite joint proprietary purpose to support submission of the issue of joint enterprise to the jury. Accordingly, the trial court erred in instructing the jury on the doctrine.

Appellee's position is that plaintiffs' journey was undertaken for the joint purpose of enhancement of the family income. Lonita's financial or pecuniary interest in the journey is alleged to stem from the fact that she was unemployed and therefore presumably dependent on the income from James' employment. Logical extension of this reasoning would require a finding of joint enterprise whenever a dependent spouse is passively present during a journey which is in some manner related to a business or pecuniary interest of the supporting spouse. In effect, appellee's position treads dangerously close to permitting a finding of joint enterprise based solely upon marital relationship, a result which this court has expressly refused to countenance. *Keck* v. *Pozorski, supra.*

In our opinion, application of the doctrine of joint enterprise to partners in a marital relationship should be limited to instances where each spouse is directly and actively involved and participating in a business or financial venture. For instance, in *Hake* v. *Moorhead* (1967), 140 Ind. App. 127, 222 N.E.2d 617, the court concluded that the negligence of one spouse could be imputed to the other in a journey to a bank to deposit funds in a joint bank account where the funds had been derived from a joint business. Likewise, in *Keck* v. *Pozorski, supra,* a joint enterprise instruction was held proper where a husband and wife were travelling together enroute to their mutual place of employment. In the case at bar, Lonita was not employed by the Marine Corps. Further, we are of the opinion that her act of driving the family vehicle for the purpose of changing their residence is not sufficient to render Lonita an active participant in James' employment relationship with the Marine Corps.

The primary purpose of a dependent spouse in accompanying his or her marital partner during a change of residence

caused by the latter's employment would appear to be perpetuation of the marital relationship. Any financial benefit accruing to the former by reason of dependency on the income of the latter is merely incidental.

For the reasons heretofore stated we fail to find evidence of the requisite joint proprietary purpose to support a finding of joint enterprise. Accordingly, we hold that an instruction on the issue of joint enterprise is not properly given where a dependent spouse accompanies his or her marital partner for the purpose of a change of residence caused by the latter's employment. The trial court therefore erred in overruling plaintiffs' objection to the court so instructing the jury in the case at bar.

## II.

The court also instructed the jury that since James was the owner of the vehicle in which he was riding, any negligence of the driver, Lonita, would be imputed to him upon a mere finding that the trip was undertaken for his or their mutual benefit.

" 'Imputed contributory negligence' has had a very bad name of its own, because of a group of quite unreasonable and rather senseless rules which were at one time applied to defeat the recovery of the injured plaintiff by imputing to him the negligence of another, even though he would not have been at all liable for that negligence as a defendant. This was done where the plaintiff and the third person stood within a limited group of special relations to one another, on the basis of which fictitious agencies were created to accomplish the result. There was much denunciation of these fictions and their consequences, as a result of which they steadily lost ground. Except for vestigial remnants which are at most moribund historical survivals, 'imputed contributory negligence' in its own right has now disappeared. *The result at which the courts have arrived is that the plaintiff will never be barred from recovery by the negligence of a third person unless the relation between them is such that the plaintiff would be vicariously liable as a defendant to another who might be injured.*" (Emphasis added.) Prosser, The Law of

Torts § 74 (4th Ed. 1971) ; See also, Restatement (Second), Torts § 485.

The question of liability of an owner for injuries sustained by third parties as a result of negligent operation of a vehicle by the owner's spouse was considered ■■■ by this court in *Pierce* v. *Horvath* (1968), 142 Ind. App. 278, 233 N.E.2d 811. Therein, it was written:

"The so-called 'family purpose' doctrine, is not recognized in Indiana; thus a husband or wife is only liable for the negligence of the other when the relation of principal and agent, or master and servant, exists between them, and the agent or servant was acting within the scope of the agency or employment at the time the negligence occurred or they were engaged in a joint enterprise. 3 I.L.E., *Automobiles*, § 106, Page 453; *Bryan* v. *Pommert* (1941), 110 Ind. App. 61, 66, 37 N.E.2d 720. *Smith* v. *Weaver, Admx.* (1920), 73 Ind. App. 350, 355, 124 N.E. 503.

"The mere fact that the marital relation existed between them, or that the one spouse is negligent in operating the automobile owned by the other spouse, will not impose liability upon the owner spouse. 8 Am. Jur.2d, *Automobiles and Highway Traffic*, § 585, p. 141; 6 Blashfield Auto Law, § 255.2, pp. 412, 413. (3rd Ed. 1966) ; *Willis* v. *Crays* (1926), 84 Ind. App. 253, 255, 151 N.E. 13.

"The plaintiff-appellant had the burden of proving by a preponderance of the evidence that the defendant-husband was acting as the agent or servant of the defendant-wife at the time of his alleged negligent act. Such relationships may arise expressly or by implication and may be shown to exist by direct or circumstantial evidence. The relationship of principal and agent, master and servant or employer and employee involving husband and wife are governed by the same principles as when involving other persons.

"In *Bryan* v. *Pommert, supra,* at page 66 of 110 Ind. App., page 721 of 37 N.E.2d, this court said:

'There is no basic or fundamental distinction to be drawn between the liability of a principal for the tortious act of his agent and the liability of a master for the tortious act of his servant. In both cases, the liability is grounded upon the maxim of respondeat superior, and in both cases the liability, exclusive of that which results from ratification, is to be determined by considering, from a factual standpoint, the question as to whether or not the tortious act

was done while the agent or servant was acting within the scope of his employment. A distinction based upon the difference in control has been suggested, but the distinction has not been maintained by the courts of this country, which have taken agents and servants to be coextensive categories as far as the question of their control by the employer is concerned. . . . 2 Am. Jur., *Agency*, § 359, p. 278.' See also: 60 C.J.S., *Motor Vehicles*, § 434, p. 1080. "The question whether or not the driver was acting as agent for the owner, or with the owner's permission, or was about the owner's business is usually a question of fact for the jury. 6 Blashfield Auto Law, § 255.2, p. 418, (3rd Ed. 1966) ; 41 C.J.S., *Husband and Wife*, § 70, p. 547."

While our Supreme Court has determined that an owner's presence in his automobile is an element properly considered in determining the question of his liability for damages resulting from its negligent operation, such is not conclusive. See, *Jones* v. *Carey* (1941), 219 Ind. 268, 37 N.E.2d 944.

Without further analysis, it is apparent that the instruction here at issue represented such an oversimplification of applicable legal principles as to be prejudicial and misleading. Plaintiffs' objection should therefore have been sustained.

## III.

James has failed to demonstrate error in defendant's tendered instruction concerning plaintiffs' duty of care which generally informed the jury that plaintiffs had the duty to exercise ordinary care to protect themselves from injury. The instruction does not, in our opinion, operate to impute the negligence, if any, of the driver to the passenger. Further, we note that plaintiffs failed to tender any instructions more specifically defining or attempting to distinguish between specific duties of a driver and passenger.

## CONCLUSION

Reversible error having been demonstrated in the instruction given allowing the contributory negligence, if any, of

Lonita to be imputed to James, the judgment with respect to the jury's verdict in favor of defendant and against plaintiff James must be reversed and the cause remanded with instructions to grant him a new trial.

Reversed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 344 N.E.2d 320.