**Jayma WATSON, Petitioner, Cross–Respondent,**

v.

**REGIONAL TRANSPORTATION DISTRICT, Respondent, Cross–Petitioner.**

No. 86SC230.

Supreme Court of Colorado, En Banc.

Sept. 12, 1988.

As Modified on Denial of Rehearing Oct. 17, 1988.

Stevens & Littman, Andrew C. Littman, Boulder, for petitioner, cross-respondent.

Eiberger, Stacy & Smith, Lawrence D. Stone, Denver, for respondent, cross-petitioner.

LOHR, Justice.

Jayma Watson (Watson) suffered severe injuries to her right leg and foot when the motorcycle on which she was riding as a passenger collided with a bus owned and operated by the Regional Transportation District (RTD). The motorcycle was operated by Watson's husband, Randy. Wat-

son brought a negligence action against RTD. A jury determined that she had suffered damages in the amount of $100,000 and that fifty-one percent of the damages were caused by the negligence of RTD and forty-nine percent by the negligence of Randy Watson. The trial court ruled that the negligence of Watson's husband must be imputed to her and entered judgment in favor of Watson and against RTD in the sum of $51,000. Watson appealed and RTD cross-appealed. The Colorado Court of Appeals upheld the imputation of the negligence of Randy Watson to his wife but reversed the judgment and remanded for a new trial on the basis of RTD's cross-appeal because of defects in the jury instructions. *Watson v. Regional Transp. Dist.*, 729 P.2d 988 (Colo.App.1986). We granted Watson's petition for certiorari to review the imputation of negligence issue, and granted RTD's cross-petition for certiorari to resolve a work product question not addressed by the court of appeals. We conclude that the negligence of Watson's husband should not have been imputed to her and that the trial court properly resolved the work product issue. We therefore remand the case to the court of appeals with directions to return it to the trial court for a new trial.

## I.

This case arose out of a traffic accident that occurred on April 23, 1982, in Boulder, Colorado. Watson and her husband were traveling west on their motorcycle on Arapahoe Avenue at a distance behind an RTD bus. The bus stopped for a stoplight at 33rd Street and began a right turn after the light changed. Before completing the turn, the bus stopped again.[1] Watson's husband applied the brakes on the motorcycle when he saw the bus stop. The motor-cycle skidded sixty-three feet and struck the rear of the bus.

At the time of the accident, the Watsons were running errands prior to traveling to Longmont with friends. Although Jayma Watson owned the motorcycle jointly with her husband, she did not have an operator's license and did not know how to operate the motorcycle.

Watson brought an action against RTD in Boulder County District Court for the injuries she suffered in the accident, alleging that the RTD bus driver was negligent, that RTD was negligent in choosing the bus route, and that these acts of negligence were the causes of her injuries.[2] RTD denied the allegations of negligence and affirmatively alleged that Watson's negligence or the negligence of her husband caused or contributed to the accident. RTD further asserted that any negligence of Watson's husband must be imputed to her.

Prior to trial, RTD moved for summary judgment. In the motion, RTD argued that the accident was caused solely by the negligence of Watson's husband. RTD further argued that Randy Watson's negligence must be imputed to Jayma Watson as a matter of law, "since Jayma Watson is the joint owner of the motorcycle, was a passenger on the motorcycle at the time of the rear-end collision, and Mr. and Mrs. Watson were proceeding to an agreed upon destination for a common purpose." RTD also argued that "[t]here is no evidence or facts which demonstrate any negligence on the part of [RTD] at the time the rear-end collision occurred."

The trial court granted RTD's motion in part, holding that Randy Watson was negligent as a matter of law and that his negligence must be imputed to Jayma Watson. The court denied the motion with respect to RTD's negligence, finding that a genuine

---

1. The reason that the bus stopped after commencing to turn, and other circumstances surrounding the accident were the subjects of conflicting evidence at trial. RTD presented evidence that the stop was necessary to avoid hitting automobiles stopped at the light on 33rd Street. Watson presented evidence that this was not so and that in any event a proper turn would have avoided any such problem. Resolution of this question was for the jury.

2. Watson also named the City of Boulder as a defendant, alleging that it was negligent in designing or maintaining the streets. The action was later dismissed as to the City of Boulder for reasons not relevant to our review.

issue of material fact existed as to whether RTD was negligent. Watson subsequently filed a motion to reconsider the granting of partial summary judgment. Following a hearing, the trial court rescinded its ruling that Watson's husband was negligent as a matter of law. However, the court refused to alter its ruling that any negligence on the part of Watson's husband would be imputed to Watson.

During the course of discovery, Watson's counsel and an accident-reconstruction expert conducted and videotaped an experiment involving an RTD bus performing turns from Arapahoe Avenue onto 33rd Street at the location of the accident. The experiment was done with the cooperation of RTD, which supplied the driver. Shortly thereafter on the same day, RTD's counsel conducted and personally videotaped a second experiment. Watson's counsel and the accident-reconstruction expert observed the second experiment although RTD's counsel was not aware of their presence. Watson's counsel subpoenaed the videotape of the second experiment. Prior to the trial, RTD's counsel objected to the production of the videotape on the grounds that it constituted his work product and that its admission into evidence would make him a potential witness in the case. The court ordered RTD to produce the videotape pursuant to the subpoena for submission to the jury. The court, however, refused to allow Watson's counsel to preview the tape, because in the court's view that would have constituted discovery after the deadline for discovery had passed.

The case proceeded to a trial before a jury. Both videotapes were admitted into evidence and shown to the jury as part of Watson's case. At the conclusion of the evidence, the trial court directed a verdict in favor of RTD on the issue of the negli-

gence of Watson's husband. The court instructed the jury that

[t]he Court has determined as a matter of law that Randy Watson was negligent at the time of the accident because he did not drive his motorcycle in such a manner as to avoid hitting the bus that was in front of him. This negligence is chargeable to Jayma Watson because she was a co-owner riding the motorcycle which was being used for a purpose in common with the driver and had a right to control his vehicle. Therefore, the Court has determined as a matter of law that the plaintiff, Jayma L. Watson, was negligent.

RTD tendered four jury instructions pertaining to the standard of care applicable to the conduct of Watson's husband. The first three instructions regarded looking but failing to see what must have been plainly visible as a failure to use reasonable care, the duty to drive at a speed no greater than is reasonable under the existing conditions, and the duty to maintain a proper lookout. The fourth tendered instruction was a negligence per se instruction. The trial court refused to submit the instructions to the jury.[3]

The jury returned a verdict finding RTD fifty-one percent negligent and Jayma Watson forty-nine percent negligent and set damages at $100,000. Following the trial, RTD filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. RTD argued, among other things, that the trial court erred as a matter of law in failing to give the four jury instructions on Randy Watson's standard of care and negligence per se, and that the trial court erred in permitting Watson's counsel access to the videotape of RTD's experiment and further erred in permitting the jury to view the tape. Watson also sought relief, pursuant to C.R.C.P. 59.[4] In

---

**3.** In its ruling refusing to submit the instructions, the trial court stated:

I believe that what I'm required to do now is, when I direct a verdict [on Randy Watson's negligence], state to the jury the reason for the directed verdict.

I think it would then be confusing for me to instruct them with respect to possible elements of negligence on the part of the Plain-

tiff, or on the part of Randy Watson, imputed to the Plaintiff when I've already instructed them that Randy Watson is negligent as a matter of law.

**4.** The motion did not specify whether the relief sought was a new trial or alteration or amendment of the judgment. See C.R.C.P. 59.

her motion, Watson argued that the trial court erred as a matter of law by imputing Randy Watson's negligence to her. The trial court denied the motions.

Watson appealed to the court of appeals, contending that the trial court erred in imputing Randy Watson's negligence to her. The court of appeals affirmed the trial court's ruling. RTD cross-appealed, arguing that the trial court erred in refusing to give the three instructions regarding the duty of care owed by Watson's husband. RTD did not appeal the trial court's refusal to give the negligence per se instruction. The court held that "[t]he failure to give these instructions prejudiced RTD to the extent that the jury had access to the applicable law to determine RTD's comparative negligence, but lacked access to the specific law applicable for the determination of plaintiff's comparative negligence." *Watson v. Regional Transp. Dist.*, 729 P.2d at 990–91. The court accordingly reversed the judgment and remanded for a new trial. RTD raised additional arguments on appeal before the court of appeals, including the contention that the trial court erred in permitting the jury to view the videotape of the accident scene filmed by RTD's counsel. The court of appeals summarily rejected these arguments. *Watson*, 729 P.2d at 991. Watson petitioned for certiorari and RTD cross-petitioned. We granted certiorari to consider whether the negligence of Randy Watson was properly imputed to Jayma Watson and whether the trial court erred in permitting the jury to view RTD's counsel's videotape of the accident scene. We first address the imputed comparative negligence issue and then consider the matter of the videotape.

## II.

### A.

■ This case presents an issue concerning the circumstances under which the neg-ligence of the operator of a motor vehicle should be imputed to a passenger in a negligence action brought by the passenger against a third party to recover damages for personal injuries. The seminal Colorado case regarding this issue is *Moore v. Skiles*, 130 Colo. 191, 274 P.2d 311 (1954).[5] In *Moore v. Skiles*, the plaintiff was injured when the truck driven by her husband in which she was riding as a passenger was involved in an accident with another vehicle. The couple owned the truck jointly. The plaintiff subsequently brought an action in negligence against the driver of the other vehicle. The trial court instructed the jury that the contributory negligence of the plaintiff's husband must be imputed to the plaintiff. In assessing the correctness of the instruction, we stated the following rule:

> [T]he owner or joint owner, riding as an occupant in his own car, using the car for a purpose in common with the driver is presumed to have a right to control the driver and a right to manage and direct the movements of the car.

*Id.*, 130 Colo. at 200, 274 P.2d at 315. We held that:

> Where, as here, joint ownership of the car is shown; where joint occupancy and possession of the vehicle is admitted, and where the occupant-owners of the car use it upon a joint mission, the driver will be presumed to be driving for himself and as an agent for the other present joint owner.

*Id.* We therefore held that the trial court acted properly in submitting the instruction on imputed contributory negligence to the jury. *Moore v. Skiles* requires for the imputation of contributory negligence the co-existence of a number of factors, which together give rise to the presumption of a "right to control" based loosely on agency notions. The case requires not only joint

---

5. Colorado, by statute, replaced the doctrine of contributory negligence with a statutory system of comparative negligence. § 13–21–111, 6A C.R.S. (1987). Courts continued to employ the doctrine of imputed negligence after the advent of comparative negligence. *See, e.g., Hover v. Clamp*, 40 Colo.App. 410, 579 P.2d 1181 (1978).

Our decision today concerns the continued viability of the rule of imputed comparative negligence. For analytical purposes, however, we conclude that cases involving imputed contributory negligence are equally applicable to the issue of imputed comparative negligence.

ownership but also "joint occupancy and possession," and a "joint mission." The presumption of a right to control engendered by such factors, however, is rebuttable. *Id.*

*Moore v. Skiles* is somewhat typical of those cases in which contributory or comparative negligence is imputed because of the existence of a "joint enterprise" between the parties. Generally speaking, a joint enterprise

> is an undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise. The law then considers that each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest.

W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 72, at 517 (5th ed. 1984) (cited herein as "Prosser and Keeton").[6]

*Moore v. Skiles* has been followed in cases subsequently decided by this court and the Colorado Court of Appeals. *See*

*Lasnetske v. Parres,* 148 Colo. 71, 365 P.2d 250 (1961); *Hover v. Clamp,* 40 Colo.App. 410, 579 P.2d 1181 (1978) (*Moore v. Skiles* not changed by advent of comparative negligence); *Romero v. Denver & Rio Grande Western Railway,* 30 Colo.App. 516, 497 P.2d 704 (1972), *rev'd on other grounds,* 183 Colo. 32, 514 P.2d 626 (1973).[7] In *Lasnetske v. Parres,* we elaborated on the right of the passenger-owner or co-owner to control the driver—the right that underpins the imputation of negligence of the driver to the passenger:

> The 'right to exercise control' is not dependent upon the ability of the passenger to actually drive the vehicle. It is not contemplated that a co-owning passenger in exercising his right to control will physically wrest the wheel from the driver. Rather, verbal admonition, suggestions or even outright commands are the usual methods whereby the co-owning passenger exercises his right to control. It is a well-known fact that some of the better 'back seat' drivers are those who know little, or nothing, about the actual driving of the vehicle, but can none-

---

**6.** The theory of joint enterprise as applied to automobile cases differs from the theory of "joint venture" applied in other contexts.

> Where the enterprise is for some commercial or business purpose, and particularly where the parties have agreed to share profits and losses, it usually is called a joint venture. It is then governed, as to tort liability, by the law applicable to partnerships.... The extension of a 'joint enterprise' beyond such business ventures is almost entirely a creature of American courts.

Prosser and Keeton § 72, at 517 (footnote omitted). *See also Breckenridge Co. v. Swales Management Corp.,* 185 Colo. 160, 163–64, 522 P.2d 737, 739 (1974) (three elements that must exist in order to show joint venture are 1) joint interest in property; 2) agreement, express or implied, to share in losses or profits of venture; and 3) actions or conduct showing cooperation in the project).

**7.** The court of appeals and this court also considered the question of imputation of negligence to a defendant in *Bainbrich v. Wells,* 28 Colo. App. 432, 476 P.2d 53 (1970) *aff'd,* 176 Colo. 503, 491 P.2d 976 (1971). *Bainbrich* involved an action by a guest in a car against the host husband's wife, who was riding as a passenger in the car. The wife was not an owner of the car. The court of appeals analyzed the question in terms of whether the husband and wife had

undertaken a joint venture or joint enterprise in operating the automobile, giving rise to the imputation of negligence from the husband to the wife. The court of appeals held that in order for a joint venture or joint enterprise to exist, "two or more persons must unite in pursuit of a common purpose, and each person must have a right to control the operation of the automobile in question." The court held that since no evidence was presented at trial indicating that the defendant-wife exercised or had any authority to exercise any control over the automobile, the husband's negligence could not be imputed to her. *Bainbrich,* 28 Colo.App. at 434, 476 P.2d at 54. *See also Mayer v. Sampson,* 157 Colo. 278, 402 P.2d 185 (1965); *Thibeau v. Wicks,* 528 P.2d 956 (Colo.App.1974) (not selected for official publication).

*Bainbrich* involved the imputation of negligence to a defendant, which necessarily involves different legal and policy considerations from the imputation of negligence to bar a plaintiff's claim for relief. These policy considerations are discussed below. Despite the fact that the cases involve distinct legal theories, the rule in *Moore v. Skiles* has sometimes been confused with the rule in *Bainbrich v. Wells. See Powell v. City of Ouray,* 32 Colo.App. 44, 507 P.2d 1101 (1973).

theless still offer friendly advice, if not flat commands, to the driver.

148 Colo. at 78, 365 P.2d at 254.

Watson urges us to reconsider the rule of *Moore v. Skiles.* She argues that an owner who is a passenger in a motor vehicle has no practical ability to exercise control over the driver and that there is no basis in logic or in policy for imputing the driver's negligence to the passenger under such circumstances. This issue has occupied the attention of many courts and commentators, and we now revisit the rule of *Moore v. Skiles* with the guidance provided by those authorities.

#### B.

Imputed negligence is a form of vicarious liability and represents one exception to the rule in our system of tort liability that individuals are responsible for their own negligence, but not that of another. *See* 4 F. Harper, F. James, Jr., & O. Gray, *The Law of Torts* § 23.1 (2d ed. 1986) (cited herein as "Harper, James and Gray"). The rule, as applied in the present context, undoubtedly rests on the legal fiction "that an owner-passenger reserves a right to control over the physical details of driving or that the driver consents to submit himself to the control of a 'back-seat driver.'" *Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476, 482 (1970). This fiction perhaps bore some resemblance to reality before the advent of the automobile, when a passenger on a wagon pulled by a team of horses could assume control of the team from the driver. *See Bauer v. Johnson,* 79 Ill.2d 324, 38 Ill.Dec. 149, 151, 403 N.E.2d 237, 239 (1980); *Kalechman v. Drew Auto Rental, Inc.,* 33 N.Y.2d 397, 353 N.Y.S.2d 414, 417, 308 N.E.2d 886, 889 (1973). Today, however, "there is no longer any basis for assuming that the passenger, no matter what his relationship to the driver may be, has the capacity to assert control over or direct the operation of a moving automobile." *Kalechman,* 353 N.Y.S.2d at 418, 308 N.E.2d at 889.

The rule of imputed negligence in motor vehicle cases, and the fictional right to control upon which it is based, arose as a result of and still find their primary justifications in considerations of public policy. Earlier in the twentieth century the growing injury toll from traffic accidents prompted a search for financially responsible defendants. *Bauer v. Johnson,* 38 Ill.Dec. at 151, 403 N.E.2d at 239; Harper, James and Gray § 23.6. The search ultimately led to the employment of the doctrine of imputed negligence in motor vehicle cases, whereby liability was imposed on the defendant owner-passenger of a vehicle based upon the negligence of the driver, even though the owner-passenger was free from negligence. Prosser and Keeton § 73. The salient rationale underlying the doctrine, as it relates to defendant owner-passengers, is that

> since automobiles are expensive, the owner is more likely to be able to pay any damages than the driver, who may be entirely impecunious; and that the owner is the obvious person to carry the necessary insurance to cover the risk, and so to distribute any losses among motorists as a class.

Prosser and Keeton § 73, at 522. Thus, the negligence of a driver was imputed to the defendant owner-passenger to provide the injured party with a financially responsible source of recovery. *See Reed v. Hinderland,* 135 Ariz. 213, 660 P.2d 464, 469 (1983); *Weber v. Stokely–Van Camp, Inc.,* 274 Minn. 482, 144 N.W.2d 540, 542 (1966). Courts justified the doctrine either by reference to the parties' legal relationship (*e.g.,* master-servant, principal-agent or joint enterprise) or simply in terms of the all-encompassing "right to control." Harper, James and Gray § 23.1; Prosser and Keeton §§ 72, 73.

The imputation of a driver's negligence to an owner-passenger, however, was later recognized in circumstances in which the owner-passenger sought recovery from a third party for injuries suffered. *Reed v. Hinderland,* 660 P.2d at 469. Absent a basis in policy or logic, but in order to provide symmetry between cases involving defendants' and plaintiffs' negligence, courts employed the rule of imputed negligence "both ways." *Johnson v. Los Ange-*

les–Seattle Motor Express, Inc., 222 Or. 377, 352 P.2d 1091, 1094–95 (1960); Harper, James and Gray § 23.1. Paradoxically, the "both-ways" rationale led courts to take a rule that departed from the common law in response to a call for wider liability and to employ that rule to curtail liability by expanding the scope of the defense of contributory negligence. Harper, James and Gray § 23.6.

The "both-ways" rule of imputed contributory negligence has attracted criticism from courts and commentators pointing out its logical infirmities and questionable policy consequences. As a result, although many courts have adopted a rule similar to that of Moore v. Skiles and have adhered

to it,[8] others have either declined in the first instance to impute contributory negligence of a driver to an owner-passenger seeking recovery from a third party for negligent infliction of injuries, or have retreated from the doctrine after initially adopting it.[9]

We conclude that the rule of imputed comparative negligence, as expressed in Moore v. Skiles, is based upon a legal fiction unsupported by, and in direct opposition to, valid policy considerations. We are persuaded that the better rule is that an owner-passenger's recovery for injuries negligently inflicted by a third party should be limited only if the owner-passenger herself is negligent and if that negligence is a

**8.** See, e.g., Smith v. Johnson, 283 Ala. 151, 214 So.2d 846 (1968); Greyhound Lines, Inc. v. Caster, 9 Storey 220, 59 Del. 220, 216 A.2d 689 (1966); Central of Ga. Rwy. v. Luther, 128 Ga. App. 178, 196 S.E.2d 149 (1973); Slutter v. Homer, 244 Md. 131, 223 A.2d 141 (1966); Menzigian v. La Riviere, 334 Mass. 610, 137 N.E.2d 925 (1956); Harper v. Harper, 225 N.C. 260, 34 S.E. 2d 185 (1945); Freeman v. Scahill, 92 N.H. 471, 32 A.2d 817 (1943); Fisch v. Waters, 136 N.J.L. 651, 57 A.2d 471 (1948); Parrish v. Walsh, 69 Ohio St.2d 11, 429 N.E.2d 1176 (1982); Schweidler v. Caruso, 269 Wis. 438, 69 N.W.2d 611 (1955).

**9.** See, e.g., Reed v. Hinderland, 135 Ariz. 213, 660 P.2d 464 (1983); Everhard v. Thompson, 202 N.W.2d 58 (Iowa 1972); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Stover v. Patrick, 459 S.W.2d 393 (Mo.1970); Smalich v. Westfall, 440 Pa. 409, 269 A.2d 476 (1970); Sumner v. Amacher, 150 Mont. 544, 437 P.2d 630 (1968); Cole v. Woods, 548 S.W.2d 640 (Tenn.1977). See also Restatement (Second) of Torts § 485 (1965).

A number of courts, while refusing to impute contributory negligence based solely on ownership or pursuant to a presumption of a "right to control," nevertheless allow the imputation of a driver's negligence to an owner-passenger pursuant to certain legal relationships between the parties. Such relationships are not presumed based on the passenger's ownership, but must be proved on a case-by-case basis. Under these cases, negligence may be imputed upon a showing of agency, see, e.g., LaMonte v. De Diego, 274 So.2d 254 (Fla.App.1973); Grinter v. Haag, 168 Ind.App. 595, 344 N.E.2d 320 (1976); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Wilkinson v. Stevison, 514 S.W.2d 895 (Tex. 1974); Wardell v. Jerman, 18 Utah 2d 359, 423 P.2d 485 (1967); on a showing of a master-servant relationship, see, e.g., Reed v. Hinderland, 135 Ariz. 213, 660 P.2d 464 (1983); Nowak v. Nowak, 175 Conn. 112, 394 A.2d 716 (1978);

Grinter v. Haag, 168 Ind.App. 595, 344 N.E.2d 320 (1976); Smalich v. Westfall, 440 Pa. 409, 269 A.2d 476 (1970); Cole v. Woods, 548 S.W.2d 640 (Tenn.1977); see also Restatement (Second) of Torts § 486 (1965); but see Weber v. Stokely–Van Camp, Inc., 274 Minn. 482, 144 N.W.2d 540 (1966) (abandons rule of imputed negligence in master-servant relationship); or on a showing of a joint enterprise; Reed v. Hinderland, 135 Ariz. 213, 660 P.2d 464 (1983); Nowak v. Nowak, 175 Conn. 112, 394 A.2d 716 (1978); Sumner v. Amacher, 150 Mont. 544, 437 P.2d 630 (1968); Kremlacek v. Sedlacek, 190 Neb. 460, 209 N.W.2d 149 (1973); Cole v. Woods, 548 S.W.2d 640 (Tenn.1977); Wilkinson v. Stevison, 514 S.W.2d 895 (Tex.1974); Palmeno v. Cashen, 627 P.2d 163 (Wyo.1981). See also Restatement (Second) of Torts § 491 (1965). But see Pierson v. Edstrom, 286 Minn. 164, 174 N.W.2d 712 (1970) (abandons rule imputing negligence of one joint venturer to another so as to bar his right of recovery against a negligent third party).

Some jurisdictions reject the rule that ownership creates a rebuttable presumption of a right to control, and go further to hold that an owner-passenger is liable only for his or her own negligence. See, e.g., Universal Underwriters Ins. Co. v. Hoxie, 375 Mich. 102, 133 N.W.2d 167 (1965); Kalechman v. Drew Auto Rental, Inc., 33 N.Y.2d 397, 353 N.Y.S.2d 414, 308 N.E.2d 886 (1973). Other jurisdictions phrase the test differently and bar recovery if the owner-passenger actually had a reasonable opportunity to control the negligent driver. See, e.g., Bauer v. Johnson, 79 Ill.2d 324, 38 Ill.Dec. 149, 403 N.E. 2d 237 (1980); Rocky Mountain Produce Trucking Co. v. Johnson, 78 Nev. 44, 369 P.2d 198 (1962); Jasper v. Freitag, 145 N.W.2d 879 (N.D. 1966); Dickson v. Hollinger, 257 Or. 89, 476 P.2d 557 (1970); Johnson v. Los Angeles–Seattle Motor Express, Inc., 222 Or. 377, 352 P.2d 1091 (1960).

proximate cause of her injury. As one commentator has stated:

> The whole doctrine of vicarious liability stems from considerations other than the defendant's personal fault, for it assumes his innocence.... If the principle of liability or disability for individualized fault is taken as the norm, and vicarious liability or disability is regarded as an exceptional solution (to be justified only for reasons of policy sufficient in each case to warrant the exception), then there would be little justification indeed for imputing negligence to an innocent plaintiff in most cases.

Harper, James and Gray § 23.6, at 441–42. The very considerations upon which the doctrine of imputed negligence rests are absent in the case of imputed comparative negligence where the owner is an injured passenger in his own car. *See Weber v. Stokely–Van Camp, Inc.*, 144 N.W.2d at 543. The sole virtue of the both ways test "is that it is logical and symmetrical. Important legal rights ought to have better footing than mere architectural symmetry." *Johnson v. Los Angeles–Seattle Motor Express, Inc.*, 352 P.2d at 1095. *See also Dickson v. Hollinger*, 257 Or. 89, 476 P.2d 557 (1970). In fact, the rule of imputed comparative negligence if applied to defeat or reduce recovery by an injured owner-passenger, only serves to frustrate the goal of broadened liability upon which the doctrine was originally based. *See Kalechman*, 353 N.Y.S.2d at 419, 308 N.E.2d at 890. A "rule which so incongruously shields conceded wrongdoing bears a heavy burden of justification." *Kalechman*, 353 N.Y.S.2d at 419–20, 308 N.E.2d at 890–91 (quoting *Badigian v. Badigian*, 9 N.Y.2d 472, 215 N.Y.S.2d 35, 38, 174 N.E.2d 718, 721 (1961)). In short, symmetry is an insufficient justification for continued adherence to a rule of law that is at odds with logic and policy.

### C.

■ The logical and practical shortcomings of the rule of imputed comparative negligence are apparent when applied to the facts of this case. The fictional "joint enterprise" upon which the Watsons embarked was simply the decision to run a couple of errands and then ride to Longmont. From this "joint enterprise" and Watson's co-ownership of the motorcycle arises a second fiction: that Jayma Watson had a "right to control" Randy Watson's actions. Jayma Watson's "right to control" leads to the third fiction: that Randy Watson was her agent. "This top heavy structure tends to fall of its own weight." Prosser and Keeton § 72, at 522. Moreover, as a practical matter any attempt on Jayma Watson's part to interfere with Randy Watson's driving at the time of the accident likely would have constituted negligence on her part as well. *See Weber v. Stokely–Van Camp, Inc.*, 144 N.W.2d at 545.

### D.

■ RTD asserts two additional arguments in support of retaining the rule of *Moore v. Skiles*, neither of which do we find persuasive. RTD first argues that absent the imputed negligence doctrine, it would have to seek contribution from Randy Watson pursuant to the Uniform Contribution Among Tortfeasors Act, §§ 13–50.5–101 to –106, 6A C.R.S. (1987). RTD argues that this course of action would be of little avail against Randy Watson, who RTD claims "is uninsured and for all intents and purposes is judgment proof." Second, RTD argues that it is unlikely that a plaintiff-spouse would seek judgment against her husband, but would rather seek to obtain judgment only against the non-spouse defendant, here RTD. RTD argues that these scenarios demonstrate "that imputation of negligence serves the important function of insuring that each party only has to pay for that percentage of the damages caused by him or her." It is the contribution act, however, and not the rule of imputed comparative negligence, that is designed to permit the equitable apportionment of losses among multiple tortfeasors. *See National Farmers Union Property & Casualty Co. v. Frackelton*, 662 P.2d 1056, 1058 (Colo.1983). The possibility that one joint tortfeasor may not be able to respond in damages is simply one inherent limita-

tion on the effectiveness of the contribution act to achieve perfect equity. *See Mountain Mobile Mix, Inc. v. Gifford*, 660 P.2d 883 (Colo.1983). The fact remains that the overriding impact of the rule of imputed comparative negligence in contexts such as that of the present case is to limit plaintiffs' recovery for injuries received through no fault of their own.

RTD also argues that were the accident to happen today, pursuant to section 13–21–111.5, 6A C.R.S. (1987), RTD would only be liable for its pro rata share of liability, fifty-one percent. RTD argues that this would be so regardless of whether Randy Watson's negligence is imputed to Jayma Watson. RTD concedes that section 13–21–111.5 applies only to civil actions commenced after July 1, 1986, and thus does not govern this case. *See* Ch. 108, sec. 7, § 13–21–111.5, 1986 Colo.Sess.Laws 680, 681. RTD argues, however, that because of the operation of section 13–21–111.5, a holding abolishing the rule of imputed comparative negligence would have no practical effect for the future. RTD's argument holds true only to the extent that the combined negligence of the defendants is more than fifty percent. *See* § 13–21–111, 6A C.R.S. (1987); *Mountain Mobile Mix, Inc. v. Gifford*, 660 P.2d at 890. However, when the defendants' combined negligence is equal to or less than the negligence of the driver of the vehicle in which the plaintiff was riding, the rule of imputed comparative negligence would bar the plaintiff's recovery. *See* § 13–21–111, 6A C.R.S. (1987). Clearly, abolishing the rule of imputed comparative negligence would benefit non-negligent plaintiffs in numerous instances.

## E.

We therefore hold that the driver's negligence may not be imputed to an owner-passenger so as to limit the owner-passenger's recovery in an action in negligence.[10] The owner-passenger's recovery shall be affected only if she is personally negligent, and if that negligence is a proximate cause of her injuries. In so holding, we overrule *Moore v. Skiles* and the cases that have followed it.[11]

## III.

■ RTD contends that the trial court erred in permitting the jury to view its counsel's videotape of the accident scene because the videotape constituted privileged attorney work product. Materials prepared in anticipation of litigation enjoy a qualified immunity from discovery under C.R.C.P. 26(b)(3). Such materials may be discovered only upon a showing by the party seeking discovery that a substantial need exists for the materials in preparing her case and that she is unable to obtain their substantial equivalent by other means without undue hardship. C.R.C.P. 26(b)(3); *Hawkins v. Dist. Court*, 638 P.2d 1372, 1376 (Colo.1982).[12]

10. In *Lee v. Colorado Department of Health*, 718 P.2d 221, 229–33 (Colo.1986), we held that in a negligence action a spouse's claim for loss of consortium is derivative for the purpose of determining comparative negligence. As a consequence, the injured spouse's negligence must be imputed to the spouse who asserts the claim for loss of consortium. Our opinion today is not intended to cast that holding into question.

11. We also granted certiorari on the following question:

Whether the trial court properly applied Colorado's law of imputed comparative negligence by holding that the petitioner had not successfully rebutted the presumption of a right to control.

Because we overrule *Moore v. Skiles* today, we need not reach this question.

12. RTD produced the videotape pursuant to a subpoena duces tecum under C.R.C.P. 45(b). A subpoena duces tecum issued pursuant to C.R.C.P. 45(b) is designed to produce evidence at trial but is not intended as a discovery device. *See People v. Chambers*, 134 Misc.2d 688, 512 N.Y.S.2d 631, 633 (Sup.Ct.1987); *Vaughan v. Broadfoot*, 267 N.C. 691, 149 S.E.2d 37, 43–44 (1966); 97 C.J.S. *Witnesses* § 25, at 382–83 (1957). The initial question is thus whether the protections from discovery accorded to attorney's work product under C.R.C.P. 26(b) are applicable when the material is sought pursuant to a subpoena duces tecum. We need not resolve the question because, as we discuss below, even if the videotape may be considered work product for purposes of C.R.C.P. 26(b), Watson has demonstrated a substantial need for the videotape and an inability to obtain its substantial equivalent without undue hardship. *Cf.* 4 J. Moore, J.

■ The videotape in question showed an RTD bus making two turns. The first turn was videotaped simultaneously by both Watson's and RTD's counsel and thus also appeared on Watson's videotape. Work product materials enjoy qualified immunity from discovery because "'the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to the orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production.'" *National Farmers Union Property & Casualty Co. v. Dist. Court*, 718 P.2d 1044, 1047 (Colo.1986) (quoting *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); *see also A. v. Dist. Court*, 191 Colo. 10, 25–26, 550 P.2d 315, 327 (1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). In this case, RTD's videotape of the first turn was made simultaneously with Watson's videotape of the same turn, and was made in public at an intersection in a sizable city. The policy reasons that normally prompt the invocation of the work product privilege simply did not exist in this instance.

The second turn was filmed solely by RTD's counsel. Watson demonstrated a substantial need for the videotape of this turn. A critical factual issue at trial was whether the bus was capable of negotiating the turn without striking a vehicle stopped for a red light on the street into which the bus was turning. The videotape depicts one of a number of manners in which the bus could negotiate the turn. Without the videotape, Watson and the jury would have been denied access to a particular depiction of this turn. Watson also demonstrated an inability to obtain the substantial equivalent of the videotape by other means without undue hardship. RTD permitted Watson's counsel to conduct the experiments only on the condition that an RTD driver operate the bus. This condition limited Watson's ability to reproduce RTD's experiment. Regarding the second turn on RTD's videotape, Watson satisfied both prongs of the *Hawkins* test.

Even where a party has made the required showing entitling her to discovery of privileged material, the court ordering discovery must protect the "'mental impressions, conclusions, opinions, or legal theories' of the attorney or other representative of the party." *Hawkins v. Dist. Court*, 638 P.2d at 1377 (quoting C.R.C.P 26(b)(3)). RTD argues that the way its counsel conducted the videotape experiment revealed his legal theories of the case, his notions concerning the accident, and strategy he would employ in preparation of the case for trial. RTD therefore argues that the videotape enjoyed more than a qualified immunity from discovery and should not have been disclosed even upon a showing of substantial need. We do not agree. The tape is no more than a visual depiction of a bus turning and simply cannot be characterized as reflecting the mental processes of RTD's counsel.

Finally, RTD argues that the trial court erred in admitting the videotape because such a ruling made its counsel a potential witness regarding the videotape. Even if RTD's counsel was a potential witness, such a situation was entirely of his own creation, based on his decision to operate the videotape camera himself.

For the foregoing reasons, we hold that the trial court did not abuse its discretion in admitting the videotape into evidence and permitting the jury to view the videotape.

The judgment of the court of appeals is affirmed in part and reversed in part and the case is returned to that court with instructions to remand the case to the trial court for a new trial in accordance with the

Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 26.64[1] (2d ed. 1987) ("[R]equisite justification must be shown whether material is sought by interrogatory, deposition, document production, or a subpoena duces tecum pursuant to Rule 45.").

views expressed in this opinion.[13]

---

**13.** Since the abrogation of the rule imputing a driver's negligence to an owner-passenger will substantially affect the evidence that can be presented and the court's instructions on the law, we conclude that fairness to the parties requires a retrial rather than entry of judgment based on the original special verdict.