993 F.2d 1552
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Allan PETRICH, Judith Petrich, Plaintiffs-Appellees,
v.
Barbara CAPPADONA, Defendant-Appellant.
 No. 92-1286.
 United States Court of Appeals, Tenth Circuit.
 May 10, 1993.
 
 ORDER AND JUDGMENT**
 Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,* District Judge.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant-appellant Barbara Cappadona appeals from a $200,000 judgment in favor of plaintiffs-appellees Allan and Judith Petrich. The issue on appeal is whether Ms. Cappadona was properly held liable as a participant in a joint enterprise for injuries sustained by the Petriches when a car rented in Ms. Cappadona's name and driven by her companion, Greg Pereire, collided with the Petriches' vehicle. We conclude Ms. Cappadona was properly held liable, and we affirm.
 
 
 3
 The parties stipulated to the following facts. Ms. Cappadona and Mr. Pereire were boyfriend-girlfriend. In August 1989, Mr. Pereire asked Ms. Cappadona to go on a vacation, and offered to pay all their expenses. Prior to their departure, Mr. Pereire purchased $1,500 in traveler's checks and two airline tickets. When the parties arrived at the airport in Denver, Mr. Pereire attempted to rent a car but was unable to do so because he did not own a credit card. Ms. Cappadona agreed to use her MasterCard for the rental, and Mr. Pereire agreed to pay her back for the rental fee in cash and traveler's checks. Although Mr. Pereire did not wish to purchase a physical damage waiver, Ms. Cappadona would not accept responsibility for the car without it. Ms. Cappadona did not want or expect to be responsible for any expenses, in accordance with her agreement with Mr. Pereire.
 
 
 4
 Ms. Cappadona signed the rental agreement as the responsible party and listed Mr. Pereire as an additional driver. Within twenty-four hours of renting the car, Mr. Pereire reimbursed Ms. Cappadona for the estimated total cost of the rental.
 
 
 5
 The parties agreed that Mr. Pereire would do most of the driving because Ms. Cappadona drove a great deal for her job and was grateful to have someone else drive. Mr. Pereire drove because he preferred to do so, and because he was familiar with Colorado. While Mr. Pereire was driving and Cappadona was dozing, he turned his head to talk to her and crossed the center of the road, colliding head-on with the Petriches' vehicle.
 
 
 6
 The Petriches commenced this diversity action against Mr. Pereire and Ms. Cappadona. The parties filed cross motions for summary judgment. The court concluded that Ms. Cappadona was liable under the joint enterprise theory, and granted partial summary judgment against her. The parties stipulated to the amount of damages, and the Petriches moved to dismiss the claims against Mr. Pereire.[1] The court entered judgment in favor of the Petriches and dismissed the claims against Mr. Pereire without prejudice.
 
 
 7
 As the facts are stipulated, our standard of review is de novo. Brown v. Palmer, 944 F.2d 732, 733 n. 1 (10th Cir.1991). Because this is a diversity case governed by Colorado law, we must ascertain and apply Colorado law such that we reach the same result that the Colorado courts would reach. Adams-Arapahoe Sch. Dist. No. 28-J v. GAF Corp., 959 F.2d 868, 870 (10th Cir.1992).
 
 
 8
 A joint enterprise is an undertaking to carry out a small number of acts or objectives, which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise. The law then considers that each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest.
 
 
 9
 Watson v. Regional Transp. Dist., 762 P.2d 133, 137 (Colo.1988) (quoting W. Keeton et al., Prosser and Keeton on the Law of Torts § 72, at 517 (5th ed. 1984)). In Colorado, the negligence of an automobile driver may be imputed to a passenger under the joint enterprise theory where the driver and passenger unite in pursuit of a common purpose, and each person has a right to control the operation of the automobile in question. Bainbrich v. Wells, 476 P.2d 53, 54 (Colo.Ct.App.1970), aff'd, 491 P.2d 976 (Colo.1971). Ms. Cappadona concedes that Mr. Pereire was negligent, and that they were pursuing a common purpose at the time they were involved in the accident. At issue is whether she had a right to control the operation of the rental car.
 
 
 10
 The right to control does not depend on the passenger's ability to actually drive the car or on his physically wresting the wheel from the driver. " 'Rather, verbal admonition, suggestions or even outright commands are the usual methods whereby the co-owning passenger exercises his right to control.' " Watson, 762 P.2d at 137 (quoting Lasnetske v. Parres, 365 P.2d 250, 254 (Colo.1961), overruled on other grounds by Watson, 762 P.2d 133). The right to control can be established by the rebuttable presumption that arises from owning or renting a vehicle. Moore v. Skiles, 274 P.2d 311, 313, 315 (Colo.1954) ( overruled on other grounds by Watson, 762 P.2d 133). If no such interest exists, it can be established by an express or implied agreement between the participants. See Bilsten v. Porter, 516 P.2d 656, 658 (Colo.Ct.App.1973).
 
 
 11
 Ms. Cappadona agrees that renting a vehicle creates a "proprietary financial interest" that gives rise to a presumption of a right of control. However, she maintains that under Bilsten, id., her agreement with Mr. Pereire rather than her agreement with the rental company determines who had a proprietary financial interest in the rental car. We disagree.
 
 
 12
 In Bilsten, Hubert, an underage boy, secured the keys to his father's car and lent them to a friend, who was also underage and unlicensed. The friend drove the car and was involved in an accident. Id. at 657. In attempting to escape liability under the joint enterprise doctrine, Hubert argued that he had no right to control the vehicle because he obtained possession without his father's permission. Id. at 658. The court rejected this argument, holding that the right to control
 
 
 13
 is a right existing between the parties to the joint venture by virtue of their express or implied agreement. Rights to control existing between a member of the joint venture and a third party are not relevant to a determination of the existence of the joint venture or as to rights of control as between participants in the joint venture.
 
 
 14
 Id.
 
 
 15
 The question in Bilsten was not whether Hubert had an ownership interest in the vehicle from which his right to control could be presumed, but rather whether he had a right to control by virtue of his agreement with his friend. Thus, we do not read Bilsten as holding that an agreement with a third party is irrelevant in determining whether one has a proprietary financial interest in a vehicle. Ms. Cappadona's legal status as lessee of the vehicle gave her a proprietary financial interest from which her right to control could be presumed. She has not argued that she rebutted this presumption.
 
 
 16
 Ms. Cappadona also contends that public policy considerations should preclude application of joint enterprise liability to her. In Watson, 762 P.2d at 138 (quoting Prosser and Keeton on the Law of Torts § 73, at 522) (citations omitted), the Colorado Supreme Court explained the public policy justification for the rule imputing negligence to nonnegligent passengers:
 
 
 17
 Earlier in the twentieth century the growing injury toll from traffic accidents prompted a search for financially responsible defendants. The search ultimately led to the employment of the doctrine of imputed negligence in motor vehicle cases, whereby liability was imposed on the defendant owner-passenger of a vehicle based upon the negligence of the driver, even though the owner-passenger was free from negligence. The salient rationale underlying the doctrine, as it relates to defendant owner-passengers, is that since automobiles are expensive, the owner is more likely to be able to pay any damages than the driver, who may be entirely impecunious; and that the owner is the obvious person to carry the necessary insurance to cover the risk, and so to distribute any losses among motorists as a class. Thus, the negligence of a driver was imputed to the defendant owner-passenger to provide the injured party with a financially responsible source of recovery.
 
 
 18
 Although the Watson court concluded that imputing comparative negligence to an owner-passenger who is a plaintiff was contrary to these policy considerations, id. at 140, it made clear that imputing negligence to an owner-passenger who is a defendant is a distinct legal theory involving different legal and policy considerations. Id. at 137 n. 7. The doctrine allowing imputation of negligence to an owner-passenger who is a defendant thus appears to have remained intact in Colorado.
 
 
 19
 Ms. Cappadona argues that these policy considerations do not support imposition of liability on one such as herself who does not own a vehicle. The rule of imputed negligence was intended to extend liability to those who more likely will be able to pay damages. Id. at 138. As observed by the district court, Ms. Cappadona had the financial wherewithal to rent a car, as evidenced by her possession of a credit card. Aplt.'s App. at 78.[2] This indicates that she is more likely able to pay damages and justifies extending liability to her.
 
 
 20
 In any event, joint enterprise liability has been imposed on individuals who did not own the vehicle in question but who had a right of control. Bilsten, 516 P.2d at 658; Boyd v. Close, 257 P. 1079, 1081 (Colo.1927). Ownership is not a prerequisite for application of the joint enterprise doctrine.
 
 
 21
 Ms. Cappadona also argues that public policy does not support imputing negligence to her because she lacked any financial interest in the vehicle. This argument is premised on her analysis of Bilsten as holding that her legal relationship with the rental company is irrelevant. We therefore reject it.
 
 
 22
 The Petriches request attorney's fees because Ms. Cappadona failed to raise any legal arguments in support of her position. We disagree and deny the request.
 
 
 23
 The judgment of the United States District Court for the District of Colorado is AFFIRMED. The request for attorney's fees is DENIED.
 
 
 
 *
 Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Mr. Pereire, who was unrepresented, was served but never filed a response. He was not the subject of the motions for summary judgment. Aplt.'s App. at 24
 
 
 [2]
 The district court noted that it had heard nothing about insurance companies or who would carry necessary insurance, but did not think the question was relevant. Aplt.'s App. at 78